252 S.E.2d 516 (1979)
40 N.C. App. 109
STATE of North Carolina, ex rel. UTILITIES COMMISSION, Nantahala Power & Light Company, Applicant,
v.
Rufus L. EDMISTEN, Attorney General, Henry J. Truett, County of Swain, North Carolina; Town of Bryson City, North Carolina, Intervenors.
No. 7810UC139.
Court of Appeals of North Carolina.
March 6, 1979.
*518 Atty. Gen. Rufus L. Edmisten by Asst. Atty. Gen. Richard L. Griffin, Raleigh.
Crisp, Bolch, Smith & Davis by William T. Crisp, Raleigh, and Spiegel & McDiarmid by Robert H. Bear, Washington, D. C., for Henry J. Truett.
McKeever, Edwards, Davis & Hays by Fred H. Moody, Jr., Bryson City, for County of Swain.
Joseph A. Pachnowski, Bryson City, for Town of Bryson City.
Joyner & Howison by R. C. Howison, Jr. and G. Clark Crampton, Raleigh, for Nantahala Power & Light Co.
*519 HARRY C. MARTIN, Judge.
Intervenors argue that the Commission erred in refusing to make Tapoco a party to these proceedings. At the threshold, this requires us to determine whether, on the record before us, Tapoco is a public utility. Utilities Commission v. Water Co., 248 N.C. 27, 102 S.E.2d 377 (1958). A public utility is defined in Section 62-3(23) of the General Statutes of North Carolina (1977 Supplement):
(23) a. "Public utility" means a person, whether organized under the laws of this State or under the laws of any other state or country, now or hereafter owning or operating in this State equipment or facilities for:
1. Producing, generating, transmitting, delivering or furnishing electricity, piped gas, steam or any other like agency for the production of light, heat or power to or for the public for compensation;
. . . . .
b. The term "public utility" shall for rate-making purposes include any person producing, generating or furnishing any of the foregoing services to another person for distribution to or for the public for compensation.
"Person" includes a corporation. N.C.Gen. Stat. 62-3(21).
The record shows Tapoco is a "person," being a Tennessee corporation domesticated in 1954 to do business in the state of North Carolina. Since 1955 it has owned and operated electric generating facilities at Santeetlah and Cheoah in Graham County, North Carolina. At these two plants Tapoco generates and transmits electricity to TVA, a corporation chartered by acts of Congress. TVA distributes this electricity to or for the public for compensation.
On 16 February 1955, Tapoco, Nantahala, and Carolina Aluminum (a public utility in North Carolina and the previous owner, before Tapoco, of the Santeetlah and Cheoah plants) jointly filed for a certificate of public convenience and necessity with the North Carolina Utilities Commission to permit Tapoco to acquire from Carolina Aluminum the Santeetlah and Cheoah plants and to operate them. In the application Tapoco agreed to make available to Nantahala such electric power as requested by Nantahala to serve the villages of Santeetlah and Tapoco in Graham County. The certificate issued by the Commission ordered Tapoco to so do. Approximately 300 people live in these villages.
By virtue of the New Fontana Agreement of 1962, TVA acquires all the electricity of Nantahala and Tapoco as it is generated at the plants. This includes all four of Tapoco's plants, two being in Tennessee, and eight of Nantahala's eleven plants, Nantahala's three small facilities being excluded. In return for their pooling of this generation with TVA, Nantahala and Tapoco receive entitlements to some 1,912,308,000 KWH annually. These entitlements are shared by agreements of Nantahala, Tapoco and Alcoa executed in 1963 and 1971. With Tapoco still acting under its certificate of public convenience and necessity, Nantahala receives under the apportionment agreement sufficient electricity to serve the villages of Tapoco and Santeetlah and continues to provide this service. All of Tapoco's power is transmitted to TVA for distribution. TVA, through the apportionment agreements, distributes the power to the public. Nantahala receives some and Alcoa receives some. Any surplus over the New Fontana Agreement entitlements can be used by TVW to reduce its steam generated production and thus reduce the cost to the consuming public. Both Alcoa and Nantahala are members of the "public" within N.C.G.S. 62-3(23). "Public" is not defined in Chapter 62 of the General Statutes of North Carolina. "Public" means the whole body politic, the body of the people at large, Black's Law Dictionary 1393 (4th ed. rev. 1968), the people as a whole, Webster's Third New International Dictionary 1836 (1967). Tapoco's delivery of its power to TVA and the distribution by TVA of that power under the pooling and apportionment agreements is the furnishing *520 of electricity "to another for distribution to or for the public for compensation." N.C. Gen.Stat. 62-3(23).
In 1955 Tapoco secured a certificate of public convenience and necessity from the North Carolina Utilities Commission before commencing the generation and transmission of electricity in North Carolina. The articles of incorporation of Tapoco state the purpose of the corporation is to produce and provide electric power to the public. It does produce and sell electricity in North Carolina. To grant a certificate of public convenience and necessity to conduct a business which is not a public utility, within the definition of the statute, would be both arbitrary and in excess of the statutory authority of the Commission. Utilities Commission v. Telegraph Co., 267 N.C. 257, 148 S.E.2d 100 (1966). A public utility must obtain a certificate before beginning operation of any public utility plant. N.C.Gen. Stat. 62-110. "One does not need a certificate of public convenience and necessity in order to engage in a business which is not that of a public utility as defined in G.S. 62-3(23)." 267 N.C. at 267, 148 S.E.2d at 108. In granting Tapoco's certificate, the Commission determined that the action would not be detrimental to the public interest. (Exhibit 7, Commission order in Docket E-27.) Tapoco has never petitioned to have its certificate of public convenience and necessity revoked or abandoned.
Tapoco has, by paragraph 4 of its articles of incorporation, the power of eminent domain. It is domesticated in North Carolina. The power of eminent domain is inherent in the certificate of public convenience and necessity. Carolina Aluminum acquired part of the Santeetlah development, now owned and operated by Tapoco, through the power of eminent domain. Manufacturing Co. v. Aluminum Co., 207 N.C. 52, 175 S.E. 698 (1934). The very purpose of Tapoco seeking the certificate of public convenience and necessity was to allow it to acquire and operate the properties of Carolina Aluminum. After so doing, Tapoco cannot abandon the public purpose status of the properties and convert them to private use. Having received the benefits of its chartered privileges, including the ownership of property obtained, at least in part, by the power of eminent domain, Tapoco is charged with the corresponding responsibilities in a business affected with a public interest. Utilities Com. v. Mead Corp., 238 N.C. 451, 78 S.E.2d 290 (1953).
In Manufacturing Co. v. Aluminum Co., supra, the Court was required to determine whether Carolina Aluminum Company was a public utility with the right of eminent domain. The tests applied by the Supreme Court there are pertinent here: (a) does the charter give it all rights and privileges of a public utility; (b) is it carrying out the purposes of its charter, generating and selling electricity; (c) does its charter grant it power of eminent domain. Tapoco meets each of these standards. The fact that a corporation has the authority to, and does, engage in private business in addition to its public service does not deprive it of its status as a public service corporation. A public service (public utility) corporation having the power of eminent domain makes such corporation amenable to state control through the Utilities Commission. Id.
One test to determine whether a plant or system is a public utility is whether the public may enjoy it by right or by permission only. Utilities Commission v. Water Co., supra. In applying this test to Tapoco, the Utilities Commission required Tapoco in its certificate of public convenience and necessity to make available to Nantahala such power as requested to serve the 300 persons in Santeetlah and Tapoco villages. Tapoco is required to furnish this electricity for these members of the consuming public. It cannot refuse so to do and remain in compliance with its certificate of public convenience and necessity. These persons receive this electric power as a matter of right. It is immaterial that the service is limited to a specified area and that the facilities are limited in capacity. Utilities Commission v. Telegraph Co., supra.
*521 We hold Tapoco is a public utility within Chapter 62 of the General Statutes of North Carolina and is subject to control by the Utilities Commission.
We turn now to the question of whether Tapoco should be made a party to these proceedings.
Alcoa is the sole stockholder of both Nantahala and Tapoco. Alcoa controls both companies; the same Alcoa vice president supervises Tapoco and Nantahala; all of the officers and directors of Tapoco are employees of Alcoa; four directors and one general officer of Nantahala are employees of Alcoa; Alcoa supervises the accounting of both companies and provides financing for both when required. Although Alcoa was not a party to the petition for Tapoco's North Carolina certificate of public convenience and necessity, it agreed in the proceeding to provide Tapoco with necessary financing. Alcoa, Nantahala and Tapoco are parties to the New Fontana Agreement.
Nantahala and Tapoco have an integrated and interconnected electric transmission system. Both are also interconnected with TVA and other electrical systems in western North Carolina. Tapoco's two North Carolina facilities have a nameplate capacity of 155,000 KW; Nantahala's eight plants (subject to New Fontana Agreement) have nameplate capacity of approximately 98,000 KW. All the generation is hydroelectric, utilizing the waters of the Little Tennessee, Cheoah, Snowbird, and other rivers in western North Carolina. This great watershed is one of the most valuable assets of the people of North Carolina, having especial impact upon western North Carolina.
Nantahala and Tapoco are in reality one electric generating system, using waters from the same area of western North Carolina, selling all their production to one customer, TVA, and receiving in return entitlements to electric power from TVA which it transmits to other members of the public. This arrangement was created by Alcoa, primarily to provide a ready source of electricity for its aluminum producing plant at Alcoa, Tennessee, which requires enormous amounts of electricity. Initially, Nantahala was the principal source of Alcoa's power needs. From its incorporation in 1929, to 1960, most of Nantahala's total production went to Alcoa. See Utilities Commission v. Membership Corporation, 260 N.C. 59, 66, 131 S.E.2d 865, 870 (1963). As the demand of Nantahala's North Carolina consumers increased, it had less and less power available for Alcoa. In 1961 Nantahala sought permission of the Commission to divest itself of all its distribution lines, transmission lines (except its 161-KV line interconnecting with Tapoco), three small generating plants at Bryson, Dillsboro, and Franklin (not subject to New Fontana Agreement), by sale to Duke Power Company, and authority to abandon operation of its electric distribution system upon commencement of these operations by Duke. Consummation of this transaction would then allow Nantahala to send all of its hydroelectric production to its master, Alcoa, "which seeks and must have low-cost hydroelectric power." Utilities Com. v. Mead Corp., supra, 238 N.C. at 467, 78 S.E.2d at 302. The Supreme Court prevented Nantahala from abandoning its duty to serve the public. "The public has the first claim on all power generated by Nantahala." Utilities Commission v. Membership Corporation, supra, 260 N.C. at 68, 131 S.E.2d at 871. This statement also applies to Tapoco, insofar as its hydroelectric generation in North Carolina is concerned.
Since 1971 Nantahala has had no power available for direct sale to Alcoa. Its entitlements under the apportionment agreement have proved insufficient to meet the demands of its North Carolina consumers. Nantahala has been required to purchase steam-generated power from TVA with which to serve its North Carolina consumers. In the test year under consideration by the Commission, the evidence shows Nantahala generated 529,049,000 KWH, sold only 412,891,000 KWH, and yet purchased power from TVA in the amount of $1,588,270. This anomaly could only arise because of the 1971 apportionment agreement, which placed a capacity limitation of 54,300 KW on Nantahala. It must be remembered *522 that in the negotiation of the 1971 apportionment agreement, both Nantahala and Tapoco were controlled by Alcoa.
The Commission should make a determination whether the consuming public of North Carolina would benefit by having the assets and costs of Tapoco rolled-in with those of Nantahala in determining Nantahala's rate structure. This can be accomplished by making Tapoco a party to these proceedings and requiring Tapoco and Nantahala to furnish the necessary information to the Commission to enable it to make this determination. The Commission could also then consider whether to require Tapoco to file application for wholesale rate schedules before the Federal Energy Regulatory Commission in order to allow it to wholesale electricity to Nantahala.
The roll-in method of rate making is used in North Carolina in such instances as establishing rates involving Duke, Virginia Electric & Power Company, and Carolina Power & Light Company with respect to their North Carolina and South Carolina facilities, or North Carolina and Virginia facilities. In general, Nantahala's and Tapoco's properties and expenses would be considered together to form the proper rate base for Nantahala and in establishing its purchased power cost adjustment clause. The amount of Tapoco's assets and expenses to be used for this purpose can be determined by applying a formula derived from the percent of Tapoco's total production that is required by Nantahala to serve its customers above its own primary generating capability.
Tapoco, a North Carolina public utility, is using the waters of North Carolina to produce low-cost hydroelectric power with generating facilities in North Carolina. It is transmitting this power to TVA and, except for the power made available by Tapoco for the villages of Santeetlah and Tapoco, it is then furnished to its master, Alcoa. At times, when Alcoa cannot use all the power it has available, TVA may use such excess hydropower to reduce the cost of steam-generated power. With Nantahala's resources basically no longer available to Alcoa, Tapoco now finds itself in a position similar to that of Nantahala as described by Justice Barnhill (later Chief Justice) in his concurring opinion in Utilities Com. v. Mead Corp., supra, 238 N.C. at 467, 78 S.E.2d at 302:
If they will only cut through the form to the substance, they will find just another hydroelectric power producing agency of Alcoa, . . . with the right to use the water power resources of this State, exercise the power of eminent domain, and enjoy the other monopolistic privileges accorded a public utility while it was, in fact, created and exists primarily to serve its master which seeks and must have low-cost hydroelectric power.
The Commission's ruling denying the motion to make Tapoco a party is reversed.
The order of the Commission dated 14 June 1977 authorizing increased rates for Nantahala and approving a new purchased power cost adjustment clause is vacated and set aside.
This cause is remanded to the Utilities Commission for the purposes of making Tapoco a party to this proceeding; ordering Tapoco and Nantahala to provide the Commission with necessary information as to the assets and expenses of Tapoco to enable the Commission to determine whether the people of North Carolina would benefit by use of the roll-in method of rate making involving Nantahala and Tapoco; and for further proceedings not inconsistent with this opinion.
Reversed and remanded.
MORRIS, C. J., and HEDRICK, J., concur.