23664

ANCHOR POINTS, INC., and Gary C. Kinert, Respondents v. The SHOALS SEWER COMPANY and the Public Service Commission of South Carolina, Appellants.

(418 S.E. (2d) 546)

Supreme Court

*Marsha A. Ward* and *F. David Butler*, Columbia, *for appellant South Carolina Public Service Comm'n.*

*Joseph G. Wright, III* of *Wright and Trammell Law Firm,* of Anderson, *for appellant Shoals Sewer Co.*

*B. Craig Collins* and *John M.S. Hoefer*, both of *Law Offices of Mitchell Willoughby*, Columbia, *for respondents.*

Heard Feb. 18, 1992.

Decided May 26, 1992.

MOORE, Justice:

This is a sewer utility rate case in which appellants, the Public Service Commission (PSC) and the Shoals Sewer Company (Shoals Sewer), appeal from the order of the circuit court reversing the PSC's order. The PSC found that Shoals

Sewer was a public utility and established rates. The circuit court reversed the PSC. We now reverse the circuit court.

## ISSUES

(1) Is Shoals Sewer a "public utility"?

(2) Is Shoals Sewer collaterally estopped from seeking rate establishment before the PSC?

(3) Does Shoals Sewer have standing to apply for rate establishment?

(4) Does the PSC's rate establishment for Anchor Point unconstitutionally impair the Associations right to contract?

## FACTS

In 1974, Shoals I development was established by Fred Allen (Allen) as a horizontal property development. In 1984, the name of the development was changed to Anchor Point, Inc. In the master deed, the Shoals Recreation Association, Inc. (Association), was created as a nonprofit organization to provide recreational and sewer facilities for the condominium complex (Anchor Point) and Phase II of the development. The recreational facilities, including the sewer plant, are owned by the Association.

Anchor Point condominium owners possess 25% of the voting rights of the Association and Phase II property owners have 75% of the voting rights. Two-thirds of Anchor Point members must approve any amendments to the master deed. In the early 1980's, Allen defaulted on his loan and the entire development was in foreclosure for 3-4 years during which time Anchor Point operated the sewer system. Later Allen formed a new corporation, Shoals of Anderson, Inc. (Anderson),·and reacquired the project. Currently, the majority of the Phase II property is owned by Anderson which owns Shoals Sewer Company (Shoals Sewer). Shoals Sewer is a subsidiary of Anderson and is also owned by Allen.

In 1985, the Association brought three actions against individual condominium owners for nonpayment of recreational assessments.[1] The trial court awarded the Association the late fees and concluded that the appropriate method for calculat-

---

[1] *The Shoals Recreational Ass'n, Inc. v. Nairn,* 85-CP-04-568; *The Shoals Recreational Ass'n, Inc. v. Blackwell,* 85-CP-04-567; *The Shoals Recreational Ass'n, Inc. v. Atkins,* 85-CP-04-566.

ing the recreational assessment should be based on the voting rights. The Anchor Point owners and Phase II owners were to pay the remaining 75% of the expenses.

On April 6, 1989, Shoals Sewer filed an application with the PSC seeking rate establishment for sewer service to Anchor Point and Phase II. Respondents Anchor Point and Gary Kinert, President of Anchor Point, intervened and made a motion to dismiss the application, which the PSC denied. On October 4, 1989, the PSC issued an order which held that Shoals Sewer is a public utility and established rates for Shoals Sewer. Respondents appealed. The circuit court reversed the PSC's order and now the PSC and Shoals Sewer appeal.

## DISCUSSION

### (1) PUBLIC UTILITY

On review the PSC's findings will only be set aside if unsupported by substantial evidence. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 276 S.E. (2d) 304 (1981). Substantial evidence is not a mere scintilla of evidence but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached. *Id.*

> The term "public utility" includes every corporation and person furnishing or supplying in any manner gas, heat (other than by means of electricity), water, sewerage collection, sewerage disposal and street railway service, or any of them, to the public, or any portion thereof, for compensation . . .

S.C. Code Ann. § 58-5-10(3) (1976). The phrase "public or any portion thereof" means:

> the public generally, *or any limited portion of the public,* including a person, private corporation, municipality or any political subdivision of the State for which the service is performed or to which the commodity is delivered and whenever such corporation or person performs a service or delivers a commodity to the public, or any portion thereof, for which compensation is required such corporation or person is hereby declared to be a public utility subject to the jurisdiction and regulation of the Public Service Commission . . .

S.C. Code Ann. § 58-5-10(4) (1976) (emphasis added).

South Carolina has no case law interpreting these sections. However, several other jurisdictions have construed the term "public utility." Initially, it should be noted that our definition of public by including "any limited portion of the public" is much broader than other states.

Generally, whether a utility operates for public use depends on the character and extent of the use. *In re South Jersey Gas Co.*, 116 N.J. 251, 561 A. (2d) 561 (1989). An additional factor is whether the public can enjoy the utility by permission only or whether the utility is willing to serve the entire public within its service area. *State ex rel. Comm'n v. Edmisten*, 40 N.C. App. 109, 252 S.E. (2d) 516 (1979). Whether a given enterprise is public depends upon the facts of each particular case. 73B C.J.S. *Public Utilities*, § 3 (1978). Based on the facts before us and the broad language of the statute, we think that Shoals Sewer is a public utility as it serves a limited portion of the public.

Respondents argue that a system such as Shoals Sewer which is constructed solely to serve members of a nonprofit organization is not a public utility. There is a split of authority as to associations which only serve their members. In *Lockwood Water Users Ass'n v. Anderson*, 168 Mont. 303, 542 P. (2d) 1217 (Mont. 1975), the court held that if a utility confines its service to its owns members who share the costs of operation, the utility is not ordinarily a public utility.

However, in *Lewandowski v. Brookwood Musconetcong River Property Owners Ass'n*, 37 N.J. 433, 181 A. (2d) 506 (1962), the court held that a nonprofit association organized by a developer to operate a water system serviced all property owners in the development was a public utility. The court reasoned that the potential scope of the association's market which could include 350-400 lots was sufficient to establish public use.

In *Garkane Power Co. v. Public Service Comm'n*, 98 Utah 466, 100 P. (2d) 571 (Utah 1940), the court held that a nonprofit corporation which serves only its members is not a public utility. The court stated that as a matter of policy there is no need to regulate cooperatives because there is no conflict between the consumers and producers which are one and the

same. If services are not satisfactory, the consumer-members have the power to demand certain changes. Therefore, the court concluded that the function of the commission in approving rates was not needed by the cooperative and its members. *Id.* 100 P. (2d) at 573.

In South Carolina the PSC has attempted to resolve this conflict through the promulgation of regulations addressing the unique situation of homeowners associations. "A 'homeowners association,' as defined in 3 of this rule and subject to the requirements set forth herein, upon Commission order, may be found not be a utility."[2] 26 S.C. Code Ann. Reg. 103-502.2 (1991). The record in this case reveals that no entity has provided the PSC with the necessary documentation seeking approval for such an exemption.[3] We need not address whether Shoals Sewer would qualify as a homeowners association because the regulation does not state that a homeowners association is not a public utility. Rather, it provides that the PSC may exempt a homeowners association. We interpret this to mean that a homeowners association is a public utility and subject to the PSC's jurisdiction. On a case-by-case basis, the PSC may exempt a homeowners association, upon application. We now hold that Shoals Sewer is a public utility and, therefore, the PSC has jurisdiction.

### (2) COLLATERAL ESTOPPEL

In 1985, the Association brought three separate actions ■ against individual Anchor Point condominium owners to foreclose on liens for unpaid recreational assess-

---

[2] A "utility" is defined in the regulations in the same manner as a "public utility" is defined in S.C. Code Ann. § 58-5-10(3) (1976). Therefore, references to a "utility" in the regulations are more specifically references to a "public utility."

[3] There was no necessity for the Association here to apply for such an exemption because the master deed of 1974 provided the method of determining rates for sewer services. Furthermore, the agreements in the master deed predate the regulation which now requires contracts affecting sewer rates to have PSC approval. *See* 26 S.C. Code Ann. Regs. 103-503 (1976). *See also Lindler v. Baker,* 280 S.C. 130, 311 S.E. (2d) 99 (Ct. App. 1984).

The master deed requires that sewer charges be assessed on a percentage basis of annual operating expenses to members of Anchor Point Inc. (25%) and Anderson (75%). The percentage assessed are then to be prorated among the members of each entity. Any lawful amendment of these provisions of the master deed requires approval of a $^2/_3$ majority of the members of Anchor Point. Not having the ability to amend the master deed provisions, Shoals Sewer seeks establishment of rates by the PSC.

ments. The court concluded that the recreational expenses were to be assessed 25% to the Anchor Point owners and 75% to the Phase II owners, as provided in the master deed.

Respondents argue that Shoals Sewer is collaterally estopped from seeking rate establishment. "Under the doctrine of collateral estoppel, once a final judgment on the merits has been reached in a prior claim, the relitigation of those issues actually and necessarily litigated and determined in the first suit are precluded as to the parties and their privies in any subsequent action based upon a different claim." *Richburg v. Baughman*, 290 S.C. 431, 351 S.E. (2d) 164, 199 (1986).

The main issue raised in this action is whether Shoals Sewer is a public utility and subject to the PSC's jurisdiction. This issue was not decided in the three previous actions. Therefore, this action is not precluded from litigation.

(3) STANDING

Respondents argue that Shoals Sewer does not have standing to apply to the PSC because it is the Association which is to provide sewer service. Further, respondents argue that under the master deed the sewer system is owned by the Association and Shoals Sewer does not have any duty to operate the sewer system. Shoals Sewer argues that Association no longer exists because it went bankrupt. Further, Shoals Sewer argues that it has standing because it is actually operating the sewer system.

A real party in interest is one who has a real, material, or substantial interest in the subject matter of the action, as opposed to one who has only a nominal or technical interest in the action. 67A C.J.S. *Parties* § 18 (1978). Shoals Sewer has a real, material, or substantial interest in this case because it operates the sewer system. Therefore, we hold that Shoals Sewer has standing to apply to the PSC for rate establishment.

(4) IMPAIRMENT OF THE RIGHT TO CONTRACT

Respondents argue that the PSC's rate establishment unconstitutionally impairs their right to contract because the sewer rates were fixed in the master deed. In *Gwynette v. Myers*, 237 S.C. 17, 115 S.E. (2d) 673 (1960), this Court held that the right to contract is not absolute; it is

subject to the state's police powers which may be exercised for the protection of the public's health, safety, morals, or general welfare. Respondents conclude that there is no public interest involved here. Respondents, however, rely on the argument that Shoals Sewer is not a public utility. The circuit court held that because Shoals Sewer is not a public utility, it does not affect a public interest and the PSC's rate establishment would impair respondent's right to contract. Since we have found Shoals Sewer is a public utility, it affects a public interest. Therefore, the PSC under the state's police powers may establish rates for Shoals Sewer which would alter the master deed.

Based on the foregoing, we find that Shoals Sewer is a public utility and the PSC correctly established rates for Anchor Point. Accordingly, the circuit court's order reversing the PSC is

Reversed.

HARWELL, C.J., CHANDLER, FINNEY, JJ., and CURTIS G. SHAW, Acting Associate Justice, concur.