608 S.E.2d 587

MULHERIN–HOWELL, a South Carolina
Partnership, Plaintiff,

v.

Elvis COBB, Jean Cobb, William Rickborn, Patricia Rickborn,
the Council of Timesharing Interest Owners of Apartments of
Sea Cabin on the Ocean III, Charles A. Gray, and Francis M.
Gray, Defendants,

and

The Council of Timesharing Interest Owners of Apartments
of Sea Cabin on the Ocean III, Third–Party Plaintiff,

v.

Allen P. Howell, Howell & Associates, Inc., and the Estate of
Charles M. Mulherin, by Katherine S. Mulherin, Personal
Representative, Third–Party Defendants.

Of Whom Mulherin–Howell, a South Carolina Partnership, Elvis
Cobb, Jean Cobb, William Rickborn, Patricia Rickborn, Charles
A. Gray and Francis M. Gray are the, Respondents,

and

The Council of Timesharing Interest Owners of Apartments
of Sea Cabin on the Ocean III is the Appellant.

No. 3919.

Court of Appeals of South Carolina.

Heard Dec. 8, 2004.

Decided Jan. 10, 2005.

Rehearing Denied Feb. 16, 2005.

Robert R. Black and W. Andrew Gowder, of Charleston, for Appellant.

William C. Cleveland, of Charleston, for Respondent Mulherin–Howell.

ANDERSON, J.

This appeal arises from Mulherin–Howell's (Mulherin) suit to quiet title to property previously owned by Mulherin. After competing motions for summary judgment were filed, the trial court found Mulherin had standing to bring the suit and Mulherin's action was not barred by any applicable statute of limitations. Additionally, the court granted summary judgment in favor of Mulherin, Elvis and Jean Cobb, William and Patricia Rickborn, Charles and Francis Gray, and Mulherin's individual partners (collectively, Mulherin) on the counterclaims and third-party complaint filed by the Council of Timesharing Interest Owners of Apartments of Sea Cabin on The Ocean III (the Council). The Council appeals. We affirm.

## *FACTUAL/PROCEDURAL BACKGROUND*

In the mid–1980's, Mulherin developed timeshare units on the Isle of Palms in the horizontal property regime known as Sea Cabin on the Ocean III. Homeowners purchased a specific week in a specific unit. In 1987, Mulherin sold week 22 of unit 123 to the Cobbs. A deed was recorded in Charleston County. The Cobbs subsequently exchanged their first week for week 23 of unit 104. No deed was given by the Cobbs back to Mulherin for the first week. A deed was prepared establishing the Cobbs as owners of week 23 of unit 104, but it was never recorded.

The Rickborns purchased week 22 of unit 123 from Mulherin in 1989. The deed from Mulherin to the Rickborns was duly recorded. The Rickborns have continuously occupied and paid dues to the Council on their week. The Cobbs have continuously occupied and paid dues on week 23 of Unit 104. The Cobbs have never exercised ownership over week 22 of unit 123. The Council has continuously received dues from each party without questioning their right to the property.

In 1994, the Council sued Mulherin, asserting it was not properly paying dues on the timeshares it continued to own. The parties settled the suit in 1997. As part of the settlement, Mulherin agreed to deed its unsold units to the Council. Mulherin gave the Council a quitclaim deed to interests it held in any other units. Each party signed a release, which stated:

"IT IS UNDERSTOOD AND AGREED that this is a full and final Release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected." In addition to the settlement, the Council, through its attorney, agreed to "accommodate dues paying contract purchasers" in regard to settling their title once the quitclaim deed was issued. A letter written by the Council's attorney to Mulherin's attorney dated November 26, 1997, read:

As to your inquiry concerning the quitclaim deed, it was my understanding of the settlement that this would cover unidentified weeks which might have title problems or any retained or reversionary interests which [Mulherin] might have. Basically my client would prefer no lingering presence of [Mulherin] in the timeshare apartments.... **[I]t would be my expectation that the quitclaim deed may in fact transfer nothing, but rather insure that [Mulherin has] no further interest.** (Emphasis added)

Thereafter, according to William Rickborn, the Council advised him "that the Homeowners Association considered itself to be the owner of Unit 104, Week 23 [by operation of the quitclaim deed from Mulherin] and that it would not cooperate in having title to the units heretofore occupied by [Rickborn] and Mr. Cobb clarified."

In 1998, Mulherin, as owner in trust of week 23 of unit 104 for the Cobbs, brought suit against the Council to quiet title to the various units and weeks in which deeds were not properly filed and recorded. Mulherin alleged fraud based on the representations of the Council's attorney and contended the Council improperly interfered with its contract with the Cobbs for them to exchange weeks and then to deed back to Mulherin the unit, which was subsequently sold to the Rickborns. The Cobbs and Rickborns were made defendants because of their interest in the outcome of the lawsuit.[1] Mulherin did not seek any relief from them.

The Council filed an answer denying Mulherin's claims. The Council pled affirmative defenses averring Mulherin: (1) lacked standing to bring the suit; (2) released the Council

---

1. By consent order, Charles A. Gray and Francis M. Gray were made party defendants in this action.

"from the claims asserted in the Amended Complaint"; and (3) could not bring the suit because it was barred by the statute of limitations. The Council set forth counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, fraud, and slander of title. Finally, the Council filed a third-party action against Mulherin's individual partners for conspiracy. Because Charles M. Mulherin had died, his estate was named as a party.

Each party filed motions to dismiss and for summary judgment. The trial court considered all motions as motions for summary judgment. The court found Mulherin had standing to bring the suit. The court concluded there was no breach of the settlement agreement by Mulherin as it properly presented a quitclaim deed to the Council and the nature of a quitclaim deed is that there is no warranty made as to the quality of the title being transferred.

As to the Council's other claims, the court ruled: (1) the counterclaim failed to properly allege all nine elements of fraud; and (2) there is no evidence the Council did not or could not know of the existence of title problems with respect to the Cobbs and Rickborns. On the claim for slander of title, the court determined it was premature to bring the action as a counterclaim in the same action which serves as the basis of the claim because it can only be based upon a lawsuit in which a party prevails. The court found no special damages or malice were pled by the Council. As to the Council's third-party complaint alleging the individual partners of Mulherin engaged in a conspiracy with respect to how the timeshare units were originally sold, the court held the events involved took place prior to the 1997 release signed by the parties and, therefore, were barred. The court granted summary judgment in favor of Mulherin as to the Council's counterclaims and third-party complaint.

The court denied the Council's motion for summary judgment as to Mulherin's claims. The court declared Mulherin had standing to bring the action, the claims were not barred by the release as the purported actions took place after the signing of the release, and the claims were not barred by "any applicable statute of limitations."

The Council filed a motion pursuant to Rules 52(b) and 59(e), SCRCP, averring: (1) the court erred in determining Mulherin had standing; (2) there was an issue of material fact related to the Release and what claims it barred; (3) the complaint alleged special damages as to the conspiracy claim; and (4) the claim for slander of title should not have been dismissed. The court denied the motion.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *White v. J.M. Brown Amusement Co.,* 360 S.C. 366, 601 S.E.2d 342 (2004); *B & B Liquors, Inc. v. O'Neil,* 361 S.C. 267, 603 S.E.2d 629 (Ct.App.2004); *Redwend Ltd. P'ship v. Edwards,* 354 S.C. 459, 581 S.E.2d 496 (Ct.App.2003). In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Medical Univ. of South Carolina v. Arnaud,* 360 S.C. 615, 602 S.E.2d 747 (2004); *McNair v. Rainsford,* 330 S.C. 332, 499 S.E.2d 488 (Ct.App.1998). If triable issues exist, those issues must go to the jury. *Baril v. Aiken Reg'l Med. Ctrs.,* 352 S.C. 271, 573 S.E.2d 830 (Ct.App.2002); *Young v. South Carolina Dep't of Corrections,* 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999).

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Belton v. Cincinnati Ins. Co.,* 360 S.C. 575, 602 S.E.2d 389 (2004); *McCall v. State Farm Mut. Auto. Ins. Co.,* 359 S.C. 372, 597 S.E.2d 181 (Ct.App.2004); Rule 56(c), SCRCP; *see also Higgins v. Medical Univ. of South Carolina,* 326 S.C. 592, 486 S.E.2d 269 (Ct.App.1997) (noting that when ruling on motion for summary judgment, trial judge must consider all of documents and evidence within record, including pleadings, depositions, answers to interrogatories, admissions on file, and

affidavits). "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below." *Ferguson v. Charleston Lincoln Mercury, Inc.*, 349 S.C. 558, 563, 564 S.E.2d 94, 96 (2002); *see also Schmidt v. Courtney*, 357 S.C. 310, 592 S.E.2d 326 (Ct.App.2003) (noting that all ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 534 S.E.2d 688 (2000); *Hawkins v. City of Greenville*, 358 S.C. 280, 594 S.E.2d 557 (Ct.App.2004). Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is disagreement concerning the conclusion to be drawn from those facts. *Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 534 S.E.2d 672 (2000); *Ellis v. Davidson*, 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004). However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Hedgepath v. American Tel. & Tel. Co.*, 348 S.C. 340, 559 S.E.2d 327 (Ct.App.2001); *Pye v. Aycock*, 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997).

The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. *McCall*, 359 S.C. at 376, 597 S.E.2d at 183. Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003). Rather, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Ellis*, 358 S.C. at 518–19, 595 S.E.2d at 822; *Peterson v. West American Ins. Co.*, 336 S.C. 89, 518 S.E.2d 608 (Ct.App.1999); Rule 56(c), SCRCP.

The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact

finder. *Dawkins v. Fields,* 354 S.C. 58, 580 S.E.2d 433 (2003); *Rumpf v. Massachusetts Mut. Life Ins. Co.,* 357 S.C. 386, 593 S.E.2d 183 (Ct.App.2004). Because it is a drastic remedy, summary judgment should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial on disputed factual issues. *Helena Chem. Co. v. Allianz Underwriters Ins. Co.,* 357 S.C. 631, 594 S.E.2d 455 (2004); *Hawkins,* 358 S.C. at 289, 594 S.E.2d at 561–62; *Murray v. Holnam, Inc.,* 344 S.C. 129, 542 S.E.2d 743 (Ct.App.2001).

## ISSUES

I. Did the circuit court err in finding Mulherin had standing to bring the underlying action?
II. Did the circuit court err in concluding Mulherin's action was not barred by any applicable statute of limitations?
III. Did the circuit court err in granting summary judgment in favor of Mulherin where there are genuine issues of material fact?

## LAW/ANALYSIS

### I. STANDING

■ The Council argues the court erred in finding Mulherin had standing to bring the underlying action. We disagree.

■ A plaintiff must have standing to institute an action. *Joytime Distribs. & Amusement Co. v. State,* 338 S.C. 634, 528 S.E.2d 647 (1999); *Sloan v. Greenville County,* 356 S.C. 531, 590 S.E.2d 338 (Ct.App.2003). To have standing, one must have a personal stake in the subject matter of the lawsuit. *Sea Pines Ass'n for the Prot. of Wildlife, Inc. v. South Carolina Dep't of Natural Res.,* 345 S.C. 594, 550 S.E.2d 287 (2001); *Evins v. Richland County Historic Pres. Comm'n,* 341 S.C. 15, 532 S.E.2d 876 (2000); *Newman v. Richland County Historic Pres. Comm'n,* 325 S.C. 79, 480 S.E.2d 72 (1997). One must be a real party in interest. *Charleston County Sch. Dist. v. Charleston County Election Comm'n,* 336 S.C. 174, 519 S.E.2d 567 (1999); *see also Henry v. Horry County,* 334 S.C. 461, 463 n. 1, 514 S.E.2d 122, 123 n. 1 (1999) ("To have standing, one must be a real party in interest."). A real party in interest is one who has a real, material, or substantial

interest in the subject matter of the action, as opposed to one who has only a nominal or technical interest in the action. *Charleston County Sch. Dist.*, 336 S.C. at 181, 519 S.E.2d at 571; *see also Anchor Point, Inc. v. Shoals Sewer Co.*, 308 S.C. 422, 428, 418 S.E.2d 546, 549 (1992) (holding a party has standing to sue if the party has "a real, material, or substantial interest in the subject matter of the action, as opposed to ... only a nominal or technical interest in the action"); *Huff v. Jennings*, 319 S.C. 142, 148, 459 S.E.2d 886, 890 (Ct.App. 1995) ("A real party in interest is one who has a real, actual, material or substantial interest in the subject matter of the action, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the action.") (internal quotations omitted).

The Council maintains *McLeod v. Baptiste*, 315 S.C. 246, 433 S.E.2d 834 (1993), and *Shaw v. Hardy*, 270 S.C. 298, 241 S.E.2d 906 (1978), are determinative in this case. In *McLeod*, the court concluded a "grantor lacks standing to enforce a covenant against a remote grantee when the grantor no longer owns real property which would benefit from the enforcement of that restrictive covenant." *McLeod*, 315 S.C. at 247, 433 S.E.2d at 835. Thus, *McLeod* is distinguishable.

In *Shaw*, a claim of title to property was brought by Shaw against Hardy.[2] The *Shaw* court noted: "Hardy does not claim, nor is there any indication that he could claim, any interest in the property. Indeed, Hardy expressly gave up any interest he may have had in the property in question by conveying that interest to the Martin's Lake Club prior to the institution of this suit." *Id.* at 300, 241 S.E.2d at 907. The court concluded Hardy was not a proper party to the lawsuit. The court explicated:

It is true that Hardy may have an "interest" in the placement of the boundary line in the sense that he may be concerned with its ultimate placement and his potential liability, if any, to his grantee but this does not give him any adverse claim to the property claimed by Shaw so as to bring him within the purview of the statutes above quoted. Having parted with any interest in, or claim to, this proper-

---

2. Shaw was the collective name used to identify two individuals and their d/b/a company name.

ty and there being no showing of his having reacquired any interest in it, Hardy was neither a necessary nor proper party defendant and his motion for summary judgment should have been granted.[3]

*Id.* at 300–01, 241 S.E.2d at 907. *Shaw* is inapposite because Mulherin is claiming an interest in week 23 for unit 104, unlike Hardy who had disclaimed all interests adverse to Shaw.

In the instant case, Mulherin claims to be in possession of one of the weeks, specifically week 23 of unit 104. In the amended complaint, Mulherin maintained it holds the unit in constructive trust for the Cobbs pursuant to prior agreement, which allowed the Cobbs to exchange weeks. Additionally, Mulherin has an interest in enforcing its contracts with both the Cobbs and Rickborns in which it alleges the Council is interfering. The circuit court found:

> [Mulherin] clearly has an interest in the dispute because of the potential exposure it may have to the third parties if the [Council] succeed[s] in dispossessing those to whom [Mulherin] sold the units. [Mulherin] has an interest in the effect of the quitclaim deed which it provided to the [Council]. Therefore, [Mulherin] is a real party in interest and does have standing to enforce the rights that arise out of its contract of settlement with and/or quitclaim deed to the [Council].

Mulherin is "a real party in interest." Apodictically, the trial court correctly determined Mulherin had standing to bring the instant action.

## II. STATUTE OF LIMITATIONS

The Council contends the trial court erred in failing to find Mulherin's claims were barred by any applicable statute of limitations because the events underlying the action occurred not in 1998, when the suit was filed, but in 1987–1989 when the titles to week 23 of unit 104 and week 22 of unit 123 were originally conveyed with problems. We disagree.

---

3. The statutes involved in *Shaw* were: (1) S.C.Code Ann. § 15–5–30 (1976), which has been repealed and replaced with Rule 17, SCRCP; and (2) S.C.Code Ann. § 15–67–10 (1976), which allows a person in possession of property to bring an action to settle all claims against any parties who may have adverse claims.

 Initially, we note the Council failed to cite any supporting authority for this position. Further, all arguments made are merely conclusory statements. Concomitantly, the Council abandoned the issue on appeal and it need not be addressed by this court. *See First Sav. Bank v. McLean,* 314 S.C. 361, 444 S.E.2d 513 (1994) (stating Appellant was deemed to have abandoned issue for which he failed to provide any argument or supporting authority); *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.,* 343 S.C. 424, 540 S.E.2d 113 (Ct.App.2000) (declaring an issue is deemed abandoned if argument in appellate brief is only conclusory).

Even if properly presented, the issue fails on the merits. The events giving rise to the underlying action occurred after Mulherin gave a quitclaim deed to the Council for any interest it may own. The bulk of Mulherin's claims were to correct title after the Council alleged ownership of week 23 of unit 104. William Rickborn filed an affidavit indicating the Council refused to recognize his ownership over week 22 of unit 103 and had frustrated the process of the Cobbs signing over that week and taking week 23 of unit 104 as agreed upon with Mulherin. These claims could not have been brought until after the 1997 agreement and the quitclaim deed were filed.

Other claims are based upon representations made by the attorney for the Council regarding the settlement agreement. Indubitably, these claims could not have been brought in 1989, as the Council claims, because the representations were not made until 1997. The trial court properly concluded Mulherin's claims against the Council were based on events that occurred no earlier than 1997. Therefore, the action brought in 1998 is not barred by any applicable statute of limitations.

## III. SUMMARY JUDGMENT

The Council avers the trial court erred in granting Mulherin's motion for summary judgment as to its counterclaims for breach of contract, breach of covenant of good faith and fair dealing, fraud, and slander of title. Additionally, the Council complains the trial court erred in granting summary judgment on its claim for conspiracy. We disagree.

First, the Council failed to cite any supporting authority for its position. All arguments made are merely conclusory state-

ments. Consequently, the Council abandoned the issue on appeal and we need not consider it. *See Medical Univ. of South Carolina v. Arnaud,* 360 S.C. 615, 602 S.E.2d 747 (2004) (noting that failure to provide arguments or supporting authority for an issue renders it abandoned); *Muir v. C.R. Bard, Inc.,* 336 S.C. 266, 519 S.E.2d 583 (Ct.App.1999) (declaring that conclusory arguments may be treated as abandoned). Second, even if this issue was properly raised, it would fail on the merits.

### A. Breach of Contract

On the breach of contract claim, the Council argues the jury "may well have regarded the settlement agreement as a bar to [Mulherin's] initiation of this lawsuit." However, this in no way refutes the trial court's conclusion that the agreement required a quitclaim deed and did not require a warranty as to the title being transferred between the parties. A quitclaim deed does not guarantee the quality of title, but only conveys that which the grantor may lawfully convey. *See Martin v. Ragsdale,* 71 S.C. 67, 50 S.E. 671 (1905).

If the Council is maintaining Mulherin breached the contract and settlement by bringing the lawsuit after "releasing all claims," we find this argument meritless. The release did not explicitly bar claims brought subsequent to the date of the release. It does not operate as a bar to the claims brought by Mulherin because those claims arose after the settlement agreement and subsequent deeds were filed.

### B. Fraud

The only claim regarding fraud made by the Council in its brief is "[t]he trial court is in error when it states that the complaint does not set forth the nine elements of fraud. It does.... The other statements regarding this cause of action are matters of fact which present questions of fact for the jury." These statements fail to edify this court as to any evidence in the record to dispute the findings made by the circuit court.

The judge specifically found the Council failed to offer evidence of a representation made by Mulherin upon which the Council either relied or had a right to rely. The Council

alleged in its counterclaim: "The representation that [Mulherin] would convey without disclosure of secret deeds and encumbrances was material and false and known by [Mulherin] to be false or recklessly made since some of the property to be transferred had already been secretly transferred or encumbered by [Mulherin]." Yet, as the trial court determined, the Council knew or should have known of the confusion regarding title to week 22 of unit 123 and week 23 of unit 104. Both owners had been paying dues for years on the respective weeks. The Council, through its attorney, agreed to "accommodate dues paying contract purchasers" in regard to settling their title once the quitclaim deed was issued. Therefore, the trial court properly concluded no representation was made upon which the Council had a right to rely, as it knew there were problems with the title and agreed to accommodate some owners whose titles had problems.

### C. Slander of Title

The only claim the Council makes in its brief regarding slander of title is "[t]his also presents facts for the jury for no discovery has been taken prior to hearing in this matter." Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.,* 336 S.C. 53, 518 S.E.2d 301 (Ct.App.1999). However, the Council never moved for a continuance to conduct discovery, nor was this issue ever raised to the trial court. Thus, the issue is not preserved for review on appeal. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

On the merits, the slander of title claim is based upon the filing of the pleadings in the underlying matter. The Council has not established a proper basis for the claim. *See Pond Place Partners, Inc. v. Poole,* 351 S.C. 1, 567 S.E.2d 881 (Ct.App.2002) (finding judicial proceedings are privileged and cannot form the basis of a claim for slander of title).

## D. Conspiracy

The allegations in the third-party claim of conspiracy all relate to the sale of shares in Sea Cabins by Mulherin and its partners. The Council asserted the individual partners of Mulherin engaged in a conspiracy with respect to how the timeshare units were originally sold. As a result of the settlement agreement, Mulherin transferred all of its properties to the Council. The allegations do not state it continued to sell any properties after the transfer. Without question, these sales all took place prior to the settlement agreement between Mulherin and the Council. Concomitantly, the release barred all claims which either party had at the time of the settlement. The trial court properly found the conspiracy claim was barred by the release.

### CONCLUSION

We rule the trial court properly found Mulherin was a real party in interest and had standing to bring the action. We hold the action brought by Mulherin was not barred by any applicable statute of limitations. Finally, we conclude the trial court properly granted summary judgment to Mulherin on the Council's counterclaims and third-party complaint. Accordingly, the decision of the trial court is

**AFFIRMED.**

STILWELL and SHORT, JJ., concur.