# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Bryan Rearick, Appellant.

Appellate Case No. 2014-001692

———

Appeal From Beaufort County
Carmen T. Mullen, Circuit Court Judge

———

Opinion No. 27654
Heard June 15, 2016 – Filed August 17, 2016

———

## DISMISSED

———

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Senior Assistant Deputy Attorney General John Benjamin Aplin, Senior Assistant Deputy Attorney General Deborah R. J. Shupe, all of Columbia, and Solicitor Isaac McDuffie Stone, III, of Bluffton, for Respondent.

———

**JUSTICE BEATTY:** Following the circuit court judge's declaration of a mistrial over defense counsel's objection, Bryan Rearick moved to bar subsequent prosecution of the charge of felony driving under the influence resulting in death ("felony DUI") on the ground a second trial would violate the Double Jeopardy

Clause of the South Carolina and United States Constitutions.[1]  Rearick appeals the judge's order denying this motion, arguing:  (1) the denial of a motion to dismiss on double jeopardy grounds is immediately appealable; and, if so, (2) the judge's declaration of a mistrial was erroneous in that there was no "manifest necessity" to justify the ruling.  We adhere to well-established appealability precedent and dismiss the appeal as interlocutory.

## I.      Factual / Procedural History

During the late evening hours of May 30, 2010, Rearick was involved in a head-on collision on Hilton Head Island that resulted in the death of the driver of the other vehicle.  Trooper Thomas Summers with the South Carolina Highway Patrol was dispatched to the accident scene where he found Rearick receiving medical treatment in an ambulance.  Trooper Summers followed the ambulance to the hospital, interviewed Rearick, and ordered that blood be drawn for forensic toxicology analysis.  On July 22, 2010, a Beaufort County grand jury indicted Rearick for felony DUI.[2]

Rearick waived his right to a jury trial and the case proceeded as a bench trial on January 30, 2014.  At the beginning of the trial, defense counsel raised several pretrial motions.  Initially, counsel moved to dismiss the case based on the State's failure to produce the arresting officer's video recording of the incident in violation of section 56-5-2953 of the South Carolina Code.[3]  Additionally, counsel moved to suppress the blood sample taken from Rearick on the grounds:  (1) it was obtained without a warrant and without any exigency in contravention of *Missouri v. McNeely*, 133 S. Ct. 1552 (2013);[4] (2) it was obtained in violation of section 56-

---

[1]  U.S. Const. amend. V; S.C. Const. art. I, § 12.

[2]  S.C. Code Ann. § 56-5-2945(A)(2) (Supp. 2015).

[3]  *Id.* § 56-5-2953 (Supp. 2015) (requiring that a person charged with DUI have his conduct at the incident site recorded on video, including field sobriety tests, unless certain exceptions apply); *see City of Rock Hill v. Suchenski*, 374 S.C. 12, 17, 646 S.E.2d 879, 881 (2007) (holding dismissal of a DUI charge "is an appropriate remedy provided by [section] 56-5-2953 where a violation of subsection (A) is not mitigated by subsection (B) exceptions").

[4]  *Missouri v. McNeely*, 133 S. Ct. 1552 (2013) (holding that, in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not

5-2950,[5] which requires that a driver who is accused of DUI be offered a breath test before a blood sample is requested; and (3) the chain of custody of the sample was fatally defective in that the State failed to produce as a witness the nurse who allegedly drew the blood at the hospital.

The State called Trooper Summers as its primary witness during the pretrial hearing. According to Trooper Summers, the video recording device in his patrol car was activated when he turned on his blue lights to respond to the accident scene. When Trooper Summers arrived at the accident site, he encountered the EMS, the fire department, and deputies with the Beaufort County Sheriff's Department. However, he could not recall how many individuals were present and could not identify anyone by name. Yet, he specifically remembered speaking with Rearick at the scene.

On cross-examination, Trooper Summers admitted that he did not know whether a video recording of the incident had been placed into evidence. Defense counsel further questioned Trooper Summers regarding the contents of his accident report as well as the videotaped interview he provided to the South Carolina Department of Public Safety about the case. When it became evident that Trooper Summers could not recall the details of the incident, the trial judge took a forty-five minute recess to permit Trooper Summers to review his notes, the accident report, and the DVD of his interview.

Once Trooper Summers resumed his testimony, he recalled that "[t]here were some deputies" at the accident scene. He estimated that he spent approximately thirty to forty-five minutes at the accident scene and that the video recorder in his patrol car was running during that time. After hearing this testimony, defense counsel expressed concern that potentially exculpatory evidence had not been turned over by the State pursuant to *Brady*[6] and Rule 5,

---

constitute an exigency in every case sufficient to justify conducting a blood test without a warrant).

[5] S.C. Code Ann. § 56-5-2950 (Supp. 2015) (providing that a person driving a motor vehicle in South Carolina is deemed to have consented to a chemical test of his breath, blood, or urine if arrested for an offense arising out of acts alleged to have been committed while under the influence of alcohol, drugs, or a combination of the two).

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

SCRCRimP.  Counsel explained that the video recording may have contained images of Rearick's conduct and demeanor at the time of the accident and that Trooper Summers's lapel microphone may have recorded his conversations with Rearick.

The judge determined that a videotape from Trooper Summers's vehicle was not required under the circumstances and, thus, denied counsel's motion on that basis.  However, the judge shared counsel's concern that the other deputies on the scene may have videotaped Rearick's conduct and that those recordings were either not available or had not been provided to defense counsel.  When defense counsel moved to dismiss the case based on the State's failure to provide these videotapes, the trial judge took the motion under advisement.

With respect to defense counsel's remaining pretrial motions, the judge found no violation of the implied consent statute and ruled that any statements Rearick gave to Trooper Summers at the hospital were admissible.  Still, the judge took under advisement defense counsel's motion to suppress Rearick's blood alcohol content.

When trial testimony began, the State presented several witnesses to establish the chain of custody of Rearick's blood draw at the hospital after the accident.  At the conclusion of this testimony, the judge found the State had established the chain of custody and admitted the toxicology results of Rearick's blood alcohol content subject to defense counsel's ongoing, yet unresolved, objection that the blood evidence was obtained without a warrant.

The State then called Trooper Scott Ashe, a member of the Multi-Disciplinary Accident Investigation Team ("MAIT") and an expert in accident reconstruction, who testified regarding MAIT's conclusions regarding the accident. Following this testimony, defense counsel advised the judge that the State and Trooper Ashe had referred to documents that were not included in the materials turned over to her as part of discovery.  The judge recessed to allow the State time to ascertain what was not included in the discovery materials provided to the defense, to obtain the identities of any Beaufort County deputies present at the accident scene, and to determine whether there were any video recordings of the accident scene.

Once the trial reconvened the following week, the judge inquired whether all discovery material had been turned over to defense counsel.  Defense counsel acknowledged that she received the missing MAIT notes the afternoon the court recessed, but stated she was also provided a number of pages identifying vehicle

recall information regarding both vehicles involved in the accident. As a result, defense counsel moved for a dismissal on the ground that Rearick's due process rights had been violated by the State's failure to provide evidence that may have been exculpatory. In response, the State asserted that a continuance was the more appropriate remedy. The judge, however, declared a mistrial over the objection of defense counsel.

Nine days later, defense counsel filed a motion to bar subsequent prosecution on the ground a second trial would violate the Double Jeopardy Clause of the South Carolina and United States Constitutions. The judge denied this motion. While the judge noted the problems with the State's evidence and questioned whether certain exculpatory evidence had been turned over to the defense, the judge found there was no prosecutorial misconduct. The judge then explained that she considered the competing alternative remedies of a continuance, a dismissal, and a mistrial. After assessing these options, the judge determined there was "a high degree of necessity to declare a mistrial in the instant circumstance[s]." Having granted the mistrial "out of manifest necessity," the judge ruled that double jeopardy had not attached and, thus, the State was not barred from prosecuting the felony DUI charge.

Rearick appealed this order to the Court of Appeals and, subsequently, filed a motion to certify the appeal to this Court pursuant to Rule 204(b), SCACR. The State filed a motion to dismiss the appeal as interlocutory. This Court granted Rearick's motion to certify the appeal and denied the State's motion to dismiss.

## II.    Discussion

### A.    Appealability of An Order Denying A Double Jeopardy Claim

#### 1. Arguments

Rearick readily acknowledges this Court in *State v. Miller*, 289 S.C. 426, 346 S.E.2d 705 (1986), expressly held that an order denying a double jeopardy claim is not immediately appealable. However, he contends *Miller* conflicts with the United States Supreme Court's ("USSC") decision in *Abney v. United States*, 431 U.S. 651 (1977), which held that a pretrial order denying a defendant's motion to dismiss on double jeopardy grounds was a "final decision" and is "immediately appealable." Referencing *Abney*'s "substantial analysis of the Federal constitutional ban against double jeopardy," Rearick maintains *Abney* "demonstrates why an appeal *now* is required." Ultimately, Rearick seeks for this Court to overrule *Miller* and related precedent, reasoning that a state procedural

rule that conflicts with a defendant's constitutional right not to be tried twice for the same crime cannot prevail.

## 2. *Abney*

In *Abney*, the USSC "granted certiorari to determine whether a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds is a final decision within the meaning of 28 U.S.C. § 1291."[7] *Abney v. United States*, 431 U.S. 651, 653 (1977). The USSC determined that such pretrial orders "constitute 'final decisions' and thus satisfy the jurisdictional prerequisites of § 1291." *Id.* at 662.

In reaching this conclusion, the USSC prefaced its analysis by recognizing that there is no constitutional right to an appeal and there is a "firm congressional policy against interlocutory or 'piecemeal' appeals." *Abney*, 431 U.S. at 656. However, the USSC found that an order denying a defendant's motion seeking a dismissal on double jeopardy grounds satisfied the prerequisites for fitting within "'the small class of cases' that *Cohen*[8] has placed beyond the confines of the final-judgment rule." *Id.* at 659. The Court explained that: (1) these orders "constitute a complete, formal, and, in the trial court, final rejection of a criminal defendant's double jeopardy claim"; (2) "the very nature of a double jeopardy claim is such that it is collateral to, and separable from the principal issue at the accused's impending criminal trial"; and (3) "the elements of [the double jeopardy] claim are completely independent of [a defendant's] guilt or innocence." *Id.* at 659-60.

Finally, the USSC emphasized that "the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction

---

[7]    Section 28 U.S.C. § 1291 provided: "The courts of appeals shall have jurisdiction from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court." *Abney*, 431 U.S. at 653 n.1.

[8]    *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (establishing "collateral order doctrine" as an exception to the final-judgment rule; describing collateral orders as "that small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated").

and sentence." *Abney*, 431 U.S. at 660. The Court noted that it had long "recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense." *Id.* at 660-61. The Court concluded, stating "if a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." *Id.* at 662.

Although we appreciate the merit of *Abney*, it cannot be considered in a vacuum since we must analyze *Abney* in the context of the statutory prerequisites for appellate jurisdiction as prescribed by the South Carolina General Assembly.

### 3. A Criminal Defendant's Right to Appeal in South Carolina

In South Carolina, a criminal defendant has no constitutional right to appeal. Rather, a defendant's right to appeal is authorized by statutes and appellate court rules of procedure. *See State v. Wilson*, 387 S.C. 597, 599, 693 S.E.2d 923, 924 (2010) ("The right of appeal arises from and is controlled by statutory law." (citation omitted)). To appeal, a defendant must be "aggrieved"[9] by a decision that is statutorily classified as one that is appealable, which generally involves a final judgment. S.C. Code Ann. § 18-1-30 (2014) ("Any party aggrieved may appeal in the cases prescribed in this title."); Rule 201(b), SCACR ("Only a party aggrieved by an order, judgment, sentence or decision may appeal."); *see* Rule 201(a), SCACR ("Appeal may be taken, as provided by law, from any final judgment, appealable order or decision.").

The General Assembly has expressly limited those decisions that are immediately appealable.[10] Originally enacted in 1896, section 14-3-330 of the South Carolina Code provides, in pertinent part, that an immediate appeal may be taken in a law case from:

> (1) Any intermediate judgment, order or decree in a law case involving the merits in actions commenced in the court of common pleas and

---

[9] "[A]n aggrieved party is one who is injured in a legal sense or has suffered an injury to person or property." *State v. Cox*, 328 S.C. 371, 373, 492 S.E.2d 399, 400 (Ct. App. 1997).

[10] *See* S.C. Const. art. V, § 5 ("The Supreme Court shall constitute a court for the correction of errors at law under such regulations as the General Assembly may prescribe.").

general sessions, brought there by original process or removed there from any inferior court or jurisdiction, and final judgments in such actions; *provided*, that if no appeal be taken until final judgment is entered the court may upon appeal from such final judgment review any intermediate order or decree necessarily affecting the judgment not before appealed from;

(2) An order affecting a substantial right made in an action when such order (a) in effect determines the action and prevents a judgment from which an appeal might be taken or discontinues the action, (b) grants or refuses a new trial or (c) strikes out an answer or any part thereof or any pleading in any action.

(3) A final order affecting a substantial right made in any special proceeding or upon a summary application in any action after judgment.

S.C. Code Ann. § 14-3-330(1), (2), (3) (1976); *see State v. Samuel*, 411 S.C. 602, 604, 769 S.E.2d 662, 663 (2015) ("Absent some specialized statute, the immediate appealability of an interlocutory or intermediate order depends on whether the order falls within [section] 14-3-330 [of the South Carolina Code]." (citation omitted)); *see also* S.C. Code Ann. § 18-1-130 (2014) ("Upon an appeal from a judgment the court may review any intermediate order involving the merits and necessarily affecting the judgment.").

Significantly, appellate court decisions that pre-date and post-date the enactment of section 14-3-330 have consistently held that a defendant may appeal only after sentence has been imposed. Without explanation, this Court in 1880 dismissed a defendant's appeal, holding that the sentence of the defendant in the Court of General Sessions is the final judgment, from which alone an appeal may be taken. *State v. McKettrick*, 13 S.C. 439, 439 (1880).

Twenty years later, the Court applied the holding in *McKettrick* to dismiss as interlocutory an appeal of an order granting a mistrial. *State v. Hughes*, 56 S.C. 540, 35 S.E. 214 (1900). In so ruling, the Court explained:

It is a bad practice, and generally condemned, to hear appeals by piecemeal, especially in criminal cases; for it is destructive of the prompt administration of justice, which is so essential to the peace of society. To allow appeals to be heard from such preliminary rulings would enable a party charged with the most serious crime always to

secure a continuance, when otherwise not entitled to it, by simply moving to quash the indictment, and, when his motion is overruled, give notice of appeal from such ruling, and thereby stop the trial, as was in the present case. [But not so in the appeal at bar, for then several justices of this court refused to allow an appeal from a preliminary order to stay the wheels of justice.]. Both reason and authority require us to hold that this appeal is premature, and must therefore be dismissed.

*Hughes*, 56 S.C. at 543, 35 S.E. at 215.

For decades, this Court relied on *Hughes* and has consistently held that a criminal defendant may not appeal until sentence is imposed. In 1921, the Court relied on this authority to find that an order denying a motion to dismiss based on double jeopardy grounds following a mistrial provided no exception to well-established rules of appealability. *State v. Wyatt*, 115 S.C. 325, 326, 105 S.E. 704, 704 (1921) (dismissing appeal from an order denying a defendant's plea of former jeopardy following a mistrial on the ground that there had "not been any final judgment, the ruling of his honor, the presiding judge, is not appealable").

In 1986, the Court expressly considered the implications of *Abney* to extant appealability rules, including *Wyatt*. *State v. Miller*, 289 S.C. 426, 346 S.E.2d 705 (1986). In *Miller*, the defendant was convicted of murder, grand larceny, and housebreaking; however, the trial judge granted the defendant's motion for judgment notwithstanding the verdict ("JNOV"). *Id.* at 426, 346 S.E.2d at 705. The State appealed, and this Court reversed the judge's grant of JNOV and reinstated the verdicts of guilty on the charges of murder and grand larceny. *Id.* This Court, however, upheld the dismissal of the housebreaking conviction and remanded the case for sentencing. *Id.* (citing *State v. Miller*, 287 S.C. 280, 337 S.E.2d 883 (1985)). On remand, Miller moved to bar the capital sentencing proceeding on double jeopardy grounds. *Id.* The trial judge denied the motion, after which Miller filed a notice of appeal. *Id.*

This Court dismissed the appeal without prejudice to Miller's right to appeal from final judgment. *Miller*, 289 S.C. at 428, 346 S.E.2d at 706. In so ruling, the Court relied on its prior decisions holding that a criminal defendant may not appeal until sentence has been imposed and decisions holding that an order denying a double jeopardy claim is not immediately appealable. *Id.* at 427, 346 S.E.2d at 706 (citing *Hughes* and its progeny as well as *Wyatt*). The Court acknowledged Miller's argument that the rule prohibiting an immediate appeal from an order denying a double jeopardy claim had been overruled by federal decisions,

including *Abney*, which hold that appeals based on double jeopardy grounds involve final judgments that are directly appealable. *Id.* Nevertheless, the Court found that in both state and federal courts, the right to appeal a criminal conviction is conferred by statute and, as noted in *Abney*, in order to exercise that statutory right to appeal, a defendant must come within the terms of the applicable statute. *Id.* Significantly, the Court concluded that the cases cited by Miller, including *Abney*, which were based on 28 U.S.C. § 1291 had "no application to state court appeals." *Id.* The Court explicitly adhered to its "view that under § 14-3-330 (1976) a criminal defendant may not appeal until after sentence has been imposed." *Id.*

Fourteen years later, the Court reaffirmed *Miller* in *State v. Gregorie*, 339 S.C. 2, 528 S.E.2d 77 (2000). In *Gregorie*, the defendant was convicted in magistrate's court of speeding. *Id.* at 3, 528 S.E.2d at 78. He appealed to the circuit court, which reversed and remanded for a new trial, finding the State failed to introduce any evidence of the applicable speed limit. *Id.* On appeal, the Court of Appeals initially dismissed the appeal, but reinstated it and affirmed the circuit court's ruling. *Id.*

This Court overruled *Gregorie* and another related decision in which the Court of Appeals erroneously created an exception to the rule established in *Miller* that "a criminal defendant claiming a double jeopardy violation is not exempt from the regular appealability requirements." *Gregorie*, 339 S.C. at 4 n.1, 528 S.E.2d at 78 n.1. The Court clarified that the test for appealability is "not whether the appeal involves a double jeopardy claim . . . but whether the party bringing the appeal is aggrieved." *Id.* at 4, 528 S.E.2d at 78.

Applying this rule, the Court found Gregorie's appeal was immediately appealable not because it involved a double jeopardy claim, but because Gregorie was otherwise aggrieved by the new trial remedy ordered by the circuit court. *Id.* The Court noted that the circuit court found the State failed to meet its burden of proof and the State's failure to appeal that finding became the law of the case. *Id.* Ultimately, the Court found Gregorie correctly asserted that, under those circumstances, a second trial in magistrate's court would violate his double jeopardy rights. *Id.*

Recently, this Court analogized a denial of a request for immunity under the South Carolina Protection of Persons and Property Act ("Act") to a denial of a motion to dismiss a criminal case on the ground of double jeopardy. *State v. Isaac*, 405 S.C. 177, 747 S.E.2d 677 (2013). Citing *Miller*, the Court held a denial of a request for immunity under the Act is not immediately appealable. *Id.* at 185, 747

S.E.2d at 681. The Court reasoned that "[a]bsent an unambiguous expression of legislative intent, we see no reason to alter settled law concerning appealability, which additionally would have the illogical effect of elevating a statutory immunity claim over one constitutionally based." *Id.* at 184, 747 S.E.2d at 680.

### 4. Import of *Abney* to Appellate Review in State Courts

Despite the wealth of South Carolina authority to the contrary, Rearick maintains that *Abney* is controlling because the federal constitutional right against double jeopardy cannot be trumped by a state procedural rule.

We recognize the split of authority as to the import of *Abney* in the state appellate court realm. Some courts "suggest that the state, as part of its constitutional obligation to effectively enforce the double jeopardy bar, must provide for an immediate appeal from the trial court's denial of a non-frivolous double jeopardy objection." 7 Wayne R. LaFave et al., *Criminal Procedure* § 27.2(c) (4th ed. 2015).[11] In contrast, some courts reject *Abney*'s application to state

---

[11] *See, e.g.*, *State v. Choate*, 725 P.2d 764, 764 (Ariz. Ct. App. 1986) (citing *Abney* and finding that "an interlocutory appeal of a double jeopardy claim is constitutionally mandated"); *State v. Baranco*, 884 P.2d 729, 733 (Haw. 1994) (adopting *Abney* rationale and holding that "the collateral order exception to the final judgment rule permits an interlocutory appeal of an order denying a pretrial motion to dismiss an indictment on double jeopardy grounds"); *People v. Torres*, 549 N.W.2d 540, 552 (Mich. 1996) (discussing *Abney* and concluding that trial court's nonfinal decision to grant a new trial was immediately appealable because the defendant "could only have avoided the second trial by seeking an immediate appeal"); *Roberson v. State*, 856 So. 2d 532, 533 (Miss. Ct. App. 2003) (referencing *Abney* and determining that "[a]n immediate appeal regarding a denied double jeopardy claim is permitted"); *State v. Milenkovich*, 458 N.W.2d 747, 750 (Neb. 1990) (analyzing *Abney* and concluding that "a defendant must be granted the opportunity to raise a claim of double jeopardy prior to being subjected to the second trial"); *State v. Anderson*, 6 N.E.3d 23, 32 (Ohio 2014) (discussing *Abney* and concluding that "an accused would not be afforded a meaningful review of an adverse decision on a motion to dismiss and discharge on double-jeopardy grounds if that party must wait for final judgment as to all proceedings in order to secure review of the double-jeopardy decision"); *Commonwealth v. Orie*, 22 A.3d 1021, 1027 (Pa. 2011) (permitting immediate appellate review of trial court's order determining that petitioner's double jeopardy challenge was frivolous); *State v. Godette*, 751 A.2d 742, 745-46 (R.I. 2000) (citing *Abney* and recognizing that the

courts on the ground that *Abney* "is better interpreted as a case interpreting the federal statute governing appeals, not the scope of the constitutional prohibition against double jeopardy, so that its holding is not binding on state courts interpreting their own law." *Id.*[12]

We are persuaded by the holdings in those state jurisdictions that decline to adopt *Abney*. A careful review of *Abney* reveals the USSC's analysis is narrowly confined to an interpretation of federal law with no indication of a mandatory application in state courts. As we interpret *Abney*, the USSC was not analyzing whether a defendant has a constitutional right to appeal the denial of a pretrial motion to dismiss on double jeopardy grounds. Rather, the USSC was deciding whether such denial was a "final decision" within the context of 28 U.S.C. § 1291, the federal appeals statute. Thus, we find those state jurisdictions that adopt the

---

denial of a motion to dismiss on double jeopardy grounds constitutes an exception to the general rule regarding appeals in criminal cases).

[12] *See, e.g., Jones v. State*, 450 So. 2d 186, 187 (Ala. Crim. App. 1984) (acknowledging split of authority on *Abney* but taking "the view that a denial of a pretrial motion based on a plea of double jeopardy is not immediately appealable"); *State v. Fisher*, 579 P.2d 167, 170 (Kan. Ct. App. 1978) (limiting *Abney* to construction of federal appeals statute and ruling that denial of motion to dismiss did not constitute a "judgment" within the meaning of a state statute providing for appeals in criminal cases); *Huff v. State*, 599 A.2d 428, 436 (Md. 1991) (finding *Abney* "does not constitutionally mandate interlocutory appeals" and that due process does not require the State to provide an immediate appeal); *State v. Murphy*, 537 N.W.2d 492, 495 (Minn. Ct. App. 1995) (rejecting application of *Abney* where state had specific jurisdictional rule prohibiting review of a pretrial order denying defendant's motion to dismiss on double jeopardy grounds); *State v. Nemes*, 963 A.2d 847, 848 (N.J. Super. Ct. App. Div. 2008) (concluding that *Abney* does not embody a constitutional holding and, thus, defendant could not appeal as of right from trial court's interlocutory order denying his motion to dismiss on double jeopardy grounds); *State v. Joseph*, 374 S.E.2d 132, 135 (N.C. Ct. App. 1988) (limiting *Abney* to federal statute and concluding order denying defendant's motion to dismiss on double jeopardy grounds was not immediately appealable); *State v. Salzmann*, 850 P.2d 1122, 1126 (Or. Ct. App. 1993) ("The nature of the Court's analysis and the specificity in its holding persuade us that *Abney* is merely a case of statutory construction of a federal statute and not one that establishes a constitutional mandate for interlocutory appeals throughout the several states.").

rationale in *Abney* misconstrue the holding and extend it beyond what was intended by the USSC.[13]

Further, we believe an adoption of the rationale in *Abney* would have dire consequences for the future of appellate review in South Carolina.  If we were to carve out an exception for the denial of a double jeopardy claim, we believe all pretrial motions implicating a constitutional right would be subject to immediate appeal.

## B.    Other Remedies

While the procedural bar of *Miller* may seem harsh, a defendant is neither denied a future appeal nor other remedies.  A defendant may still challenge the denial of a motion to dismiss on double jeopardy grounds *via* (1) a petition for federal habeas corpus relief, or (2) a petition for this Court to issue an extraordinary writ.[14]  *See Livingston v. Murdaugh*, 183 F.3d 300, 301 (4th Cir. 1999) (affirming grant of writ of federal habeas corpus on double jeopardy grounds and recognizing that "appeal of a denial of a double jeopardy claim would be futile because the South Carolina Supreme Court has held that 'an order denying a double jeopardy claim is not immediately appealable'" (quoting *Miller*, 289 S.C. at 427, 346 S.E.2d at 706)); *Gilliam v. Foster*, 63 F.3d 287, 291 (4th Cir. 1995) (denying State's motion to stay federal district court's grant of habeas corpus for pending decision on merits of defendant's double jeopardy claim in state court proceedings; stating, "[i]t is also regrettable that, because South Carolina law does not permit an interlocutory appeal of the double jeopardy ruling, the appellate courts of that state were not the ones to rule on the matter in the first instance"); *cf. Paul v. People*, 105 P.3d 628, 633 (Colo. 2005) (en banc) (concluding that denial of defendant's

---

[13]  Notably, this Court has expressly recognized that the federal collateral order doctrine, upon which *Abney* is based, is not applied in our state courts.  *See Capital U-Drive-It, Inc. v. Beaver*, 369 S.C. 1, 8 n.2, 630 S.E.2d 464, 468 n.2 (2006) ("Although the federal collateral order doctrine is not applied in our state courts, we believe the reasoning of these cases is sound.").

[14]  S.C. Const. art. V, § 5 ("The Supreme Court shall have power to issue writs or orders of injunction, mandamus, quo warranto, prohibition, certiorari, habeas corpus, and other original and remedial writs."); S.C. Code Ann. § 14-3-310 (1976) ("The Supreme Court shall have power to issue writs or orders of injunction, mandamus, quo warranto, prohibition, certiorari, habeas corpus and other remedial and original writs.").

motion to dismiss on double jeopardy grounds was not immediately appealable, but reviewing the appeal pursuant to appellate court's original jurisdiction).

## III.  Conclusion

Despite Rearick's arguments to the contrary, we conclude that *Abney* does not alter the rule in *Miller*.  Consequently, we dismiss this appeal without prejudice.[15]

**APPEAL DISMISSED**.

**KITTREDGE and FEW, JJ., concur.  PLEICONES, C.J., and HEARN, J., concurring in result only.**

---

[15]  In view of our decision, we need not address Rearick's remaining issue regarding the trial judge's declaration of a mistrial.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address remaining issues when decision regarding a prior issue is dispositive).