BARBARA MILANO KEENAN, Circuit Judge:
Broderick William Seay, Jr. appeals from the district court's denial of his petition for habeas corpus relief under 28 U.S.C. § 2241. Seay argues that his rights under the Double Jeopardy Clause of the Fifth Amendment will be violated if the State of South Carolina (the government) retries him on murder charges in state court. The state trial court granted a mistrial in the original proceedings based on the failure of the government's critical witness to appear at Seay's trial. In Seay's view, the government failed to meet its burden of showing manifest necessity for a mistrial after the jury was empaneled and jeopardy had attached. The district court *779 denied habeas relief, holding that under the facts presented it was appropriate to defer to the state trial court's finding of manifest necessity.
Employing "strictest scrutiny" review, we conclude that the government failed to satisfy its high burden of showing manifest necessity for a mistrial. The record shows that the government allowed the jury to be empaneled knowing that the crucial witness might not appear to testify. Additionally, the state trial court failed to consider possible alternatives to granting the government's mistrial motion. We therefore vacate the district court's judgment, and remand with instructions that the district court award Seay habeas corpus relief.
I.
In 2015, a South Carolina grand jury indicted Seay on a charge of murder, in violation of South Carolina Code § 16-3-10. The government alleged that two of Seay's co-conspirators, Kevin Howard and Tyrone Drayton, kidnapped the victim, Adrian Lyles, from his home in 2012. According to the government, Seay later joined the group and, together with Howard and Drayton, drove to a remote South Carolina island where the three men shot Lyles a total of ten times in retaliation for Lyles' work as an informant for law enforcement authorities.
Howard was the first co-conspirator tried for murder. At that trial, Howard's former girlfriend, Startasia Grant, testified as a cooperating witness for the government.[1] Most relevant here, Grant testified that she joined Howard, Seay, and Drayton shortly after the time that Lyles was killed. When Grant first encountered the group, she noticed that Howard's hand was bleeding and that the three men acted "agitated" and "jumpy." Grant also testified about her interactions with the men in the hours following the murder, including her suspicion that Howard was carrying a bag with a shotgun inside. Her testimony placed Seay with the co-conspirators around the time of the murder.
After hearing additional evidence in the case, the jury found Howard guilty on the charge of murder. The state court sentenced Howard to serve a term of life imprisonment. At the time Grant testified at Howard's trial, she had been charged with obstruction of justice for her role in attempting to "cover up" the crime. However, the government dismissed that charge after Grant testified at Howard's trial.
More than two years after Howard's trial, in June 2016, the government issued a subpoena requiring Grant to testify at Seay's trial. Pursuant to the subpoena, Grant was directed to appear in the state trial court at 9:00 a.m. on "each day" of the term of court beginning on Monday, July 25, 2016. The subpoena also explained that the prosecutor's office "may be able to give [the witness] a more specific date and time to appear in Court" under certain circumstances, but nothing in the record indicates that the government advised Grant not to appear as directed on Monday.
The trial was scheduled to begin on the first day of that term, Monday, July 25, 2016. Although the prosecutor and the government's investigator spoke with Grant the weekend before the scheduled trial, Grant did not appear as required that Monday. For reasons unrelated to Grant's failure to appear, the court continued the trial to the next day.
When the court convened the following day, Tuesday, July 26, 2016, Grant again *780 failed to appear as required by her subpoena. Despite the absence of this crucial witness, the government did not seek to delay the trial, and the jury was empaneled. The government presented testimony from eight witnesses on the first day of trial. Meanwhile, the government's investigator attempted to contact Grant and left multiple messages directing her to appear in court the following morning.
On Wednesday, July 27, 2016, Grant once again failed to appear in court as ordered. After the government presented the testimony of one additional witness, the government for the first time raised to the state trial court the issue of Grant's nonappearance. The government informed the court that, since speaking with Grant on Saturday, Grant had "not been cooperative with [the prosecutor's] office at all."[2] The state trial court issued a bench warrant for Grant's arrest, and adjourned court until the next day to permit law enforcement authorities to attempt to locate her. When the court reconvened the following day, Thursday, July 28, 2016, the authorities had not located Grant, and she again failed to appear pursuant to the subpoena.
The government immediately moved for a mistrial, claiming surprise that Grant had failed to appear as a witness. The government further stated: "We are asking for a mistrial because at this point we do not know if [ ] Grant is alive. We do not know if she has been injured. We do not know if she is just scared. We do not know if she has been threatened." Seay opposed the mistrial motion, arguing that there was no evidence that he had attempted to dissuade Grant from testifying, and that the government had failed to meet the manifest necessity standard required for ordering a mistrial. After hearing further argument from counsel, the state trial court, as part of its basis for granting the motion, stated: "I do feel that the State has been caught by surprise. ... [T]he case is ongoing as of this moment. I think the public is entitled to a fair trial as is" the defendant. The court then granted a mistrial without any consideration on the record of other measures that could have been taken.
Seay later filed a motion to dismiss the indictment in state court, asserting that the constitutional protection against double jeopardy barred him from being retried on the state murder charge. After the state trial court denied Seay's motion, Seay filed a petition in the federal district court seeking habeas corpus relief under 28 U.S.C. § 2241 on the ground that a second trial would violate his rights under the Double Jeopardy Clause.[3] On the recommendation of the magistrate judge, the district court denied Seay's petition. However, the district court granted a certificate of appealability, and Seay now appeals to this Court.
II.
A.
We review de novo the district court's denial of habeas corpus relief under 28 U.S.C. § 2241. Fontanez v. O'Brien , 807 F.3d 84, 86 (4th Cir. 2015). Because Seay challenges his pretrial detention on double jeopardy grounds under Section 2241, the *781 special deference we ordinarily accord to state court judgments under 28 U.S.C. § 2254 is inapplicable here. See Phillips v. Court of Common Pleas , 668 F.3d 804, 810 (6th Cir. 2012) (collecting cases from First, Fifth, Ninth, and Tenth Circuits); see also Walck v. Edmondson , 472 F.3d 1227, 1235 (10th Cir. 2007). Section 2241 entitles a prisoner to habeas corpus relief if "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."[4] 28 U.S.C. § 2241(c)(3).
The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, prohibits states from subjecting a person to trial twice for the same crime. See Crist v. Bretz , 437 U.S. 28, 32-36, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). "In a jury trial, jeopardy attaches when the jury is empaneled," after which "the defendant has a constitutional right, subject to limited exceptions, to have his case decided by that particular jury." United States v. Shafer , 987 F.2d 1054, 1057 (4th Cir. 1993) (footnote omitted). Those exceptions apply only when the defendant's right is outweighed by "the public's interest in fair trials designed to end in just judgments." Id. (citation omitted). Accordingly, when a defendant objects to a mistrial, he may be retried only if the mistrial was "required by 'manifest necessity.' " Id. (quoting Arizona v. Washington , 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) ); see also Gilliam v. Foster , 75 F.3d 881, 893 (4th Cir. 1996) (en banc).
The government's burden of establishing manifest necessity is "a heavy one," and is subject to especially searching review when the government seeks a mistrial "in order to buttress weaknesses in [its] evidence." Arizona , 434 U.S. at 505, 507, 98 S.Ct. 824. Thus when, as here, "the basis for the mistrial is the unavailability of critical prosecution evidence,"[5] we apply "the strictest scrutiny" to the question of manifest necessity. Id. at 508, 98 S.Ct. 824. With these principles in mind, we proceed to consider Seay's arguments.
B.
Seay argues that the district court erred in concluding that the state trial court's finding of "manifest necessity" is supported by the present record. In Seay's view, the decision granting a mistrial fails under strictest scrutiny review because (1) the government was aware at the time the jury was empaneled that Grant might not appear to testify, and (2) the state trial court failed to consider other available alternatives.
In response, the government relies on the state trial court's finding that the government was "caught by surprise" when Grant failed to appear in response to the subpoena. According to the government, this factual finding and the lack of any fault on the government's part support the state trial court's determination that a mistrial was warranted for reasons of manifest necessity. We disagree with the government's position.
*782 The Supreme Court, in Downum v. United States , 372 U.S. 734, 737-38, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), explained that the double jeopardy inquiry focuses on the state's knowledge at the time the jury is empaneled. The Court emphasized that when a prosecutor empanels a jury "without first ascertaining" that his witnesses are present and available to testify, the prosecutor "t[akes] a chance."[6] Id. at 737, 83 S.Ct. 1033 (quoting Cornero v. United States , 48 F.2d 69, 71 (9th Cir. 1931) ). According to the Court, under these circumstances, the prosecutor has "entered upon the trial of the case without sufficient evidence to convict," thereby assuming the risk of jeopardy attaching in the face of weak government evidence. Id. (citation omitted). Thus, the essence of the Court's holding in Downum is that when a prosecutor agrees to the empaneling of a jury, gambling that his missing witness will appear in time to testify, the prosecutor subjects his case to a defendant's later plea of double jeopardy. See id. at 737-38, 83 S.Ct. 1033. As the Court explicitly stated, "[w]e resolve any doubt in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion." Id. at 738, 83 S.Ct. 1033 (internal quotation marks and citation omitted).
In the present case, the record shows that the government allowed jeopardy to attach with the awareness that Grant, a critical government witness, might not appear to testify. The timeline in the record is dispositive. Grant was compelled by subpoena to appear in court for the full term of court beginning on Monday, July 25, 2016, but she did not comply with that directive. Nor did Grant appear the following morning on Tuesday, July 26, 2016, before the jury was empaneled. On Wednesday, July 27, 2016, the government informed the court that Grant "ha[d] not been cooperative with [the prosecutor's] office at all" after state officials had spoken with her the Saturday before trial. The prosecutor and state investigator had attempted to locate Grant several times between Monday and Wednesday morning during the week of trial, including visiting Grant's apartment and place of employment, contacting Grant's sisters, and sending Grant multiple text messages.
Reading this record in its totality, two facts are apparent. First, the government knew that its crucial witness had failed to appear as required by subpoena for two consecutive days before the jury was empaneled. The government nevertheless allowed jeopardy to attach, risking the foreseeable possibility that Grant would not appear in time to testify.
Second, given the serious nature of the case, the government plainly was concerned throughout the week of trial that Grant might not appear. The government knew that its star witness was being asked to testify against a defendant charged with murdering a "snitch." The government also knew that it had relinquished its leverage over Grant by dismissing the obstruction charges that had induced Grant to testify in the earlier trial. Indeed, one of the government's justifications for seeking a mistrial was the speculation that Grant had been harmed to prevent her from testifying. Consistent with this background knowledge, as noted above, the prosecutor and investigator took several steps to locate Grant on Monday and Tuesday during the week of trial.
*783 In view of these facts, we disagree with the dissent's assertion that the government employed a "standard procedure for calling subpoenaed witnesses to testify in multiday trials," and instructed Grant not to appear until the Wednesday of trial. Dissent at 20. Although Grant's subpoena indicated that the prosecutor's office "may be able to" provide a more specific date for Grant's testimony, nothing in the record suggests that the prosecutor in fact followed such a practice with Grant. The mere fact that the prosecutor could have done so says nothing about what the prosecutor actually told Grant. And, notably, the government never told the state trial court that Grant was not required to appear on the Monday and Tuesday of trial as commanded by her subpoena.[7] Under our "strictest scrutiny" standard of review, we cannot construe such absence of factual support in the record in favor of the state.
Applying our heightened standard of review, we conclude that the record does not support the conclusion that the government was surprised when Grant failed to appear to testify. We emphasize that it was the government's heavy burden to establish manifest necessity and to develop the record to support such a finding, even in the dynamic context of a murder trial. For example, the government: (1) could have stated clearly whether it had relieved Grant of her obligation under the subpoena to appear on Monday and Tuesday; (2) could have clarified the timeline and contents of state officials' communications with Grant both before and during the trial; and (3) could have preserved on the record the text message allegedly received by the government investigator indicating that Grant was afraid to testify. See supra note 2. The dissent attempts to supplement these gaps in the record with its own speculation about what "must" or "should" have happened, and construes all aspects of the existing record in favor of the government. However, bound by strictest scrutiny review, we decline to remedy the government's failure to satisfy its burden by inserting hypothetical "facts" into the record.
The heart of the constitutional protection against double jeopardy prohibits the government from obtaining a "second bite at the apple" when the government has been unable to marshal sufficient evidence to convict in the first trial. See Shafer , 987 F.2d at 1059 ; Sanders v. Easley , 230 F.3d 679, 686 (4th Cir. 2000) (at the "extreme" end of the spectrum when double jeopardy applies "are situations in which the prosecution seeks a mistrial in order to have additional time to marshal evidence to strengthen the case against the defendant"). Here, given the government's failure to produce its own witness in a timely fashion, a mistrial was not manifestly necessary because of surprise to the government. Instead, the mistrial afforded the government "a more favorable opportunity to convict" the defendant at a new trial with the testimony of the missing witness. Downum , 372 U.S. at 736, 83 S.Ct. 1033. Accordingly, we conclude that the government's allegation of surprise fails to support the state trial court's finding of manifest necessity.
Notwithstanding this absence of surprise, the government nevertheless maintains that the record supports the state *784 trial court's decision to grant a mistrial. In particular, the government contends that the state trial court exercised a "cautious approach" before granting a mistrial, by continuing the trial overnight while law enforcement authorities sought to locate the missing witness. Accordingly, the government argues that because Grant "was such a critical witness, and the remaining witnesses to be called in the case in chief depended on her testimony, it is difficult to see an actual, viable, sufficient alternative available" to the state trial court. We disagree with the government's position.
In determining whether the government has satisfied its burden to show manifest necessity, "the critical inquiry is whether less drastic alternatives were available." Shafer , 987 F.2d at 1057 ; see also United States v. Jorn , 400 U.S. 470, 487, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion) (manifest necessity did not exist when trial judge gave "no consideration ... to the possibility of a trial continuance" instead of a mistrial). When such alternatives are available, "society's interest in fair trials designed to end in just judgments [is] not in conflict with the defendant's right to have the case submitted to the jury." Shafer , 987 F.2d at 1057 (internal citation and quotation marks omitted).
And when, as here, the strictest scrutiny standard of review applies, the trial court's consideration of reasonable alternatives is a central factor in our heightened review of manifest necessity. All alternative options must be evaluated, and all reasonable choices exhausted, before the government may reap the benefit of a second opportunity to prove a defendant's guilt. We thus agree with our sister circuits' conclusion that, applying strictest scrutiny review, the government must demonstrate that the trial court gave "careful consideration" to the availability of reasonable alternatives to a mistrial, and that the court concluded that none were appropriate. United States v. Fisher , 624 F.3d 713, 722 (5th Cir. 2010) ; see also Walck, 472 F.3d at 1240 ; United States v. Rivera , 384 F.3d 49, 56 (3d Cir. 2004). If the trial court's assessment of reasonable alternatives does not appear on the record, a finding of manifest necessity will not be upheld under the lens of strictest scrutiny.[8] See Fisher , 624 F.3d at 723.
In the present case, as discussed above, Grant failed to comply with the terms of her subpoena, which required her to appear for court on Monday, July 25, 2016, Tuesday, July 26, 2016, and Wednesday, July 27, 2016. After Grant did not appear on those days, despite the government's multiple attempts to contact her, the state trial court issued a bench warrant for her arrest on Wednesday, July 27, 2016, and adjourned the trial until the following morning. The government requested a mistrial shortly after the court reconvened on Thursday, July 28, 2016, on the basis that law enforcement authorities had been unable to locate Grant. After oral argument, the court granted the mistrial.[9]
*785 While the state trial court explained its rationale for granting the motion, the record before us does not show that the court considered any available alternatives before granting the government's mistrial motion. For example, the court did not discuss why it did not continue the trial one additional day, or over the weekend until the following Monday, August 1, 2016, to give law enforcement authorities additional time to locate Grant. Likewise, the court failed to discuss why it did not require the government, which had 18 remaining witnesses listed for the case, to present testimony from some of those witnesses while the efforts to locate Grant continued.[10] Thus, the record contains no analysis of potential alternatives to a mistrial as required by our precedent. Without considering the viability of possible alternatives, the "drastic" step of declaring a mistrial is not supported by the record. See Shafer , 987 F.2d at 1057 ; Rivera , 384 F.3d at 56 (holding that a trial court "must exercise prudence and care, giving due consideration to reasonably available alternatives to the drastic measure of a mistrial").
We therefore conclude that the state trial court erred in finding manifest necessity for a mistrial, and that the district court erroneously accorded deference to that decision. In doing so, we "resolve any doubt in favor of the liberty of the citizen," who was defending against the charged offense when the state trial court abruptly ended the trial and dismissed the jury. Downum , 372 U.S. at 738, 83 S.Ct. 1033 (internal quotation marks omitted).
Finally, we emphasize that this case sharply illustrates the consequences of the government's too ready reliance on the short-term solution of a mistrial to solve a common trial predicament. The clear loser in this scenario is the public, which had a strong interest in having Seay tried under the murder indictment. However, as a result of the government's ill-advised request for a mistrial, approved by the state trial court without consideration of existing alternatives, Seay is entitled to the habeas corpus relief that will afford him his constitutional rights under the Double Jeopardy Clause.
III.
For these reasons, we vacate the district court's judgment, and remand the case to the district court with instructions to grant Seay's petition for habeas corpus relief under 28 U.S.C. § 2241.
VACATED AND REMANDED WITH INSTRUCTIONS

The record contains inconsistent spellings of Grant's first name. We use the spelling included on the government's witness list and subpoena for Seay's trial.

The government represented to the state trial court that Grant had informed the government's investigator in a text message sometime on Tuesday, July 26, 2016, or on Wednesday, July 27, 2016, that she did not intend to testify because she was frightened. The government, however, failed to preserve the text message or the investigator's electronic device. Instead, the record contains only an unverified statement of the purported text message.

At Seay's request, the state court agreed to continue the trial until final adjudication of Seay's Section 2241 petition.

Under South Carolina law, Seay may not raise his double jeopardy arguments in an interlocutory appeal. See State v. Rearick , 417 S.C. 391, 790 S.E.2d 192, 195, 199 (2016). Thus, because South Carolina's procedures do not afford Seay adequate protection against a double jeopardy violation, we do not abstain from intervention in the ongoing state criminal proceedings pursuant to Younger v. Harris , 401 U.S. 37, 91 S.Ct. 746, 756, 760, 27 L.Ed.2d 669 (1971). See Robinson v. Thomas , 855 F.3d 278, 285-89 (4th Cir. 2017).

The state trial court found that Grant was a critical prosecution witness. The parties do not dispute this characterization.

In Downum , although the prosecutor had not served a summons on the witness requiring his appearance before the trial court, the Supreme Court did not assign particular weight to that fact in determining that the government failed to show manifest necessity for a mistrial. See 372 U.S. at 737, 83 S.Ct. 1033.

While we agree that the record "conclusively shows" that the government directed Grant to appear in court on the Wednesday of trial, we emphasize that this fact does not "conclusively show" that the government had directed Grant not to appear until Wednesday. Dissent at 794-95. Moreover, the dissent's characterization of this timeline is undermined by the government's numerous attempts to locate Grant between Monday and Wednesday morning.

We recognize that the Supreme Court in Arizona did not require trial courts to articulate on the record reasons for finding manifest necessity. 434 U.S. at 517, 98 S.Ct. 824. However, that portion of the analysis in Arizona does not govern the very different circumstances present here. The Court in Arizona accorded "great deference" to the trial court's evaluation of whether potential juror bias warranted a mistrial. Id. at 510, 514, 98 S.Ct. 824. In contrast, here, we apply the much more rigorous "strictest scrutiny" review, applicable to "extreme" cases in which the government seeks a mistrial "in order to buttress weaknesses in [its] evidence." Id. at 507-08, 98 S.Ct. 824.

The following day, Friday, July 29, 2016, law enforcement authorities successfully executed the bench warrant and arrested Grant. She was detained and, one month later, was found in contempt of court for her failure to comply with the subpoena.

The government maintains that, although its witness list included 18 additional witnesses, the government only planned to call "two or three" of these witnesses. According to the government, these two or three witnesses would provide cell phone location evidence, and their testimony would lose its "corroborative value" without Grant's testimony detailing Seay's movements following the murder. However, these issues, including the possibility of altering the planned order of proof, should have been fully discussed and evaluated by the state trial court before a mistrial was granted.