# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

South Carolina Coastal Conservation League, Southern Alliance for Clean Energy, and South Carolina Solar Business Alliance, LLC, Appellants,

v.

Dominion Energy South Carolina, Inc. and South Carolina Office of Regulatory Staff, Respondents.

Appellate Case No. 2018-001165

Appeal from the Public Service Commission

Opinion No. 27994
Heard September 26, 2019 – Filed September 9, 2020

### DISMISSED

James Blanding Holman IV, Southern Environmental Law Center, of Charleston, for South Carolina Coastal Conservation League and Southern Alliance for Clean Energy. Joseph Samuel Dowdy and Benjamin L. Snowden, Kilpatrick Townsend & Stockton LLP, of Raleigh, NC; Richard L. Whitt, Whitt Law Firm, LLC, of Columbia, for South Carolina Solar Business Alliance, LLC.

John Marion S. Hoefer, Mitchell Willoughby, and Chad Nicholas Johnston, Willoughby & Hoefer, PA, of Columbia; Matthew William Gissendanner and K. Chad Burgess, of Cayce, for Dominion Energy South Carolina, Inc. Jenny Rebecca Pittman and Andrew McClendon

Bateman, of Columbia, for South Carolina Office of Regulatory Staff.

Andrew McClendon Bateman and Jenny Rebecca Pittman, both of Columbia, for Amicus Curiae, South Carolina Office of Regulatory Staff.

**JUSTICE FEW:** This is an appeal from an order of the Public Service Commission setting rates an electric utility must pay to solar and other qualifying renewable energy producers for electricity the utility will then sell to its customers. We dismiss the appeal because two of the appellants lack standing to appeal and—as to the remaining appellant—the appeal is moot.

## I.      Introduction

Federal law requires electric utilities to offer to purchase renewable electric energy from any qualifying facility that seeks to sell it. South Carolina law implementing the federal requirements required that our Public Service Commission (PSC) conduct annual proceedings and set the rates an electric utility must pay. In 2018, the PSC set the rates for Dominion Energy South Carolina, Inc., then known as South Carolina Electric & Gas Company. This is an appeal from the PSC's 2018 order.

South Carolina Coastal Conservation League, Southern Alliance for Clean Energy, and South Carolina Solar Business Alliance, LLC intervened at the PSC. Each filed notices to appeal the PSC's order to this Court. Following oral argument, at which the Court raised the questions of standing and mootness, Dominion filed a motion to dismiss the appeal on those grounds.

We find Coastal Conservation League and Southern Alliance may not appeal the PSC's order because neither is "a party aggrieved" under Rule 201(b) of the South Carolina Appellate Court Rules, and neither is a "party in interest" under section 58-27-2310 of the South Carolina Code (2015). Therefore, Coastal Conservation League and Southern Alliance do not have standing to appeal the PSC's order. We do not reach the question whether Solar Business Alliance has standing to appeal.

As to Solar Business Alliance, we find the appeal is moot. The rates the PSC set in 2018 have been superseded by rates the PSC set in 2019. The General Assembly enacted new legislation in 2019 that significantly changed the procedures the PSC

followed in 2019 and must follow in future proceedings. Thus, any guidance this Court could provide by addressing this appeal would be academic.

## II.     Federal and State Law

We begin by summarizing the rather complicated governing federal and state law.

### a.     Public Utility Regulatory Policies Act

The Public Utility Regulatory Policies Act,[1] commonly called PURPA, was enacted "to encourage (1) conservation of energy supplied by electric utilities; (2) the optimization of the efficiency of use of facilities and resources by electric utilities; and (3) equitable rates to electric consumers." 16 U.S.C. § 2611 (2010). Congress specifically intended to promote the production of renewable energy from sources such as solar. *Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 404, 103 S. Ct. 1921, 1924, 76 L. Ed. 2d 22, 27 (1983). A renewable energy producer that qualifies for the provisions of PURPA is called a "qualifying" facility. 16 U.S.C. § 796(17)(A), (C), (18)(A), (B) (2010).

PURPA requires that electric utilities offer to purchase renewable energy from qualifying facilities. It provides the Federal Energy Regulatory Commission (FERC) "shall prescribe . . . rules [which] require electric utilities to offer to . . . purchase electric energy from [qualifying] facilities," 16 U.S.C. § 824a-3(a)(2) (2010), and the rules "shall insure that . . . the rates for such purchase" are "just and reasonable to the electric consumers of the electric utility and in the public interest" and do not "exceed[] the incremental cost to the electric utility of alternative electric energy." 16 U.S.C. § 824a-3(b).

The terms "incremental costs" and its synonym "avoided costs" are central to the rate-setting procedures under PURPA. Congress defined "incremental cost" as "the cost to the electric utility of the electric energy which, but for the purchase from such [qualifying facility], such utility would generate or purchase from another source." 16 U.S.C. § 824a-3(d) (2010).[2] In other words, the PSC may not set the rates for

---

[1] Public Utility Regulatory Policies Act of 1978, Pub. L. No. 95-617, 92 Stat. 3117 (codified as amended in scattered sections of titles 7, 15, 16, 42, and 43 U.S.C.).

[2] FERC rules and regulations use the term "avoided costs" and define the term to mean "the incremental costs to an electric utility of electric energy or capacity or both which, but for the purchase from the qualifying facility or qualifying facilities,

renewable energy higher than the combination of expenses and capital costs the utility would incur if it produced the electricity itself, or if it purchased the electricity from another provider.

### b. South Carolina Law Implementing Federal Requirements

In 2018, South Carolina law required the PSC to set the rates for renewable energy as part of a utility's annual "fuel cost" review proceeding. S.C. Code Ann. § 58-27-865 (2015). The applicable statute—still in effect for other purposes—requires the PSC to conduct "twelve-month reviews to determine whether an increase or decrease in the base rate amount designed to recover fuel cost should be granted." § 58-27-865(B). "The term 'fuel cost' . . . includes . . . fuel costs related to purchased power." § 58-27-865(A)(1). The term "fuel costs related to purchased power" includes "costs under . . . PURPA." § 58-27-865(A)(2).

In 2019, the General Assembly enacted the South Carolina Energy Freedom Act. Act No. 62, 2019 S.C. Acts 368. Section 1 of the Act sets forth new procedures through which the PSC must set rates for renewable energy under PURPA. *See* S.C. Code Ann. §§ 58-41-05 to -40 (Supp. 2019). Subsection 58-41-20(A)(1) specifically provides the proceedings are now "separate from the electrical utilities' annual fuel cost proceedings conducted pursuant to Section 58-27-865." The new procedures "include . . . discovery, filed comments or testimony, and an evidentiary hearing." § 58-41-20(A)(2). Under one particularly important new procedure, the PSC "shall engage . . . a qualified independent third party to submit a report that includes the third party's independently derived conclusions as to that third party's opinion of each utility's calculation of avoided costs for purposes of proceedings conducted pursuant to this section." § 58-41-20(I). The PSC must now conduct these proceedings and set new rates "at least once every twenty-four months." § 58-41-20(A).

## III. Standing

"Only a party aggrieved by an order, judgment, sentence or decision may appeal." Rule 201(b), SCACR. "An aggrieved party is one who is injured in a legal sense or has suffered an injury to person or property." *State v. Looper*, 421 S.C. 384, 388, 807 S.E.2d 203, 205 (2017) (quoting *State v. Rearick*, 417 S.C. 391, 398 n.9, 790 S.E.2d 192, 196 n.9 (2016)). The right to appeal an order of the PSC is specifically

---

such utility would generate itself or purchase from another source." 18 C.F.R. § 292.101(b)(6) (2020).

governed by section 58-27-2310, which provides a "party in interest . . . may appeal." We have interpreted the similar term "real party in interest" narrowly in the administrative context. *See Anchor Point, Inc. v. Shoals Sewer Co.*, 308 S.C. 422, 428, 418 S.E.2d 546, 549 (1992) ("A real party in interest is one who has a real, material, or substantial interest in the subject matter of the action, as opposed to one who has only a nominal or technical interest in the action."). Coastal Conservation League and Southern Alliance do not meet either standard.

Neither organization is "aggrieved" or a "party in interest" because the rates set by the PSC affect only qualifying facilities. The rates do not affect the environmental or consumer interests represented by the two organizations. *See Pub. Serv. Co. of Oklahoma v. State ex rel. Oklahoma Corp. Comm'n*, 115 P.3d 861, 870-71 (Okla. 2005) ("The incremental cost standard is intended to leave ratepayers economically indifferent to the source of a utility's energy by ensuring that the cost to the utility of purchasing power from a [qualifying facility] does not exceed the cost the utility would incur in the absence of the [qualifying facility] purchase."); *Armco Advanced Materials Corp. v. Pennsylvania Pub. Util. Comm'n*, 634 A.2d 207, 209 (Pa. 1993) (Papadakos, J., concurring) ("The Congressional intent of the avoided cost pricing scheme is to make the utilities' ratepayers economically indifferent between utility power plant additions and utility purchases of [qualifying facility] power."). Thus, any impact on customers' rates must come from the PSC's ruling in a general ratemaking proceeding, not from the PSC's ruling to set rates for renewable energy under PURPA.

The regulation allowing "intervention" at the PSC is less restrictive than our rules for appellate standing. *See* S.C. Code Ann. Regs. 103-825(A)(3) (2012) (requiring simply that petitions to intervene at the PSC state "clearly and concisely" the facts supporting the alleged right or interest, the grounds of the proposed intervention, and the position of the petitioner in the proceeding). The fact a party was allowed to intervene at the PSC does not equate to standing to appeal the PSC's decision. *See* 73B C.J.S. *Public Utilities* § 259 (2015) (recognizing "a party who is permitted to intervene in the public utility commission proceedings does not automatically have standing to seek review"); S.C. Code Ann. Regs. 103-804.H (2012) ("Admission as an intervenor shall not be construed as recognition by the Commission that such intervenor might be aggrieved by any order of the Commission in such proceeding.").

Both organizations argue they have "associational standing." However, neither organization's "members would otherwise have standing to sue in their own right," which is required for associational standing. *Carnival Corp. v. Historic*

*Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 76, 753 S.E.2d 846, 851 (2014). Coastal Conservation League and Southern Alliance lack standing to appeal the PSC's order.

Solar Business Alliance, on the other hand, asserts its "more than sixty [members] include[] solar energy developers," at least one of which owns a qualifying facility. Because Dominion did not challenge the standing of Solar Business Alliance until after briefing, Solar Business Alliance was deprived of the opportunity to fully develop a factual record supporting its claim that its members would have standing. Therefore, we decline to decide in this appeal whether Solar Business Alliance has associational standing.

## IV.    Mootness

At oral argument, we questioned whether any qualifying facility sought to sell renewable energy to Dominion under the 2018 rates.  No party could provide the Court with definitive answers at that time.  After Dominion filed its motion to dismiss, the parties informed us that no qualifying facility sought to sell renewable energy to Dominion under the PR-2 rate, one of the rates set by the PSC in 2018.  In fact, the PSC determined in its 2019 order, "in light of the requirements of [the Energy Freedom Act], the Company's Rate PR-2 is no longer necessary or required." *See* Docket No. 2019-184-E, Order No. 2019-847, at 90.  All issues related to the PR-2 rate for 2018 are moot.

As to one other rate—the PR-1 rate—there were approximately forty qualifying facilities that sold renewable energy to Dominion under the 2018 order.  Dominion explained that if the PSC had adopted the appellants' proposal concerning one component of the PR-1 rate—the avoided capacity cost component—rather than the proposal made by Dominion, "these [qualifying facilities] collectively would have realized additional revenue of approximately $600 over a twelve-month period." The parties agree this would average out to approximately $15 for each qualifying facility.  Solar Business Alliance concedes this amount is "relatively small," but asserts $15 per qualifying facility is "real and quantifiable."  Importantly, however, not one of the forty qualifying facilities is owned by or known to be connected with any member of Solar Business Alliance.

This is not a claim for damages.  This is not a claim brought by a qualifying facility. This is not a claim brought by an entity with any connection to any qualifying facility that would be affected by our decision.  This is an appeal from an order setting rates a utility must offer for renewable energy.  The rates have expired.  If we were to

reverse the PSC, our ruling would have no effect on the only remaining appellant. The only effect our decision could have would be that a non-party to this appeal would earn additional revenue of $15. "A case becomes moot when judgment, if rendered, will have no practical legal effect upon existing controversy." *Byrd v. Irmo High Sch.*, 321 S.C. 426, 431, 468 S.E.2d 861, 864 (1996) (quoting *Mathis v. S.C. State Highway Dep't*, 260 S.C. 344, 346, 195 S.E.2d 713, 715 (1973)). We find any issues regarding the propriety of the PR-1 rate are moot.

Solar Business Alliance argues that an exception to mootness applies. It contends the Energy Freedom Act does not address several issues raised in this appeal, such as the burden of proof, and "with the biennial . . . rate updates now mandated . . . , it is likely that future challenged rates will have expired by the time this Court can decide any appeal of the Commission's . . . decisions." While the latter point is undoubtedly valid, we believe the Act does address all issues raised by Solar Business Alliance in this appeal. Specifically, the requirement in newly-enacted subsection 58-41-20(I) that the PSC "engage . . . a qualified independent third party to submit a report that includes the third party's independently derived conclusions as to that third party's opinion of each utility's calculation of avoided costs" relates directly to the burden of proof. The issues raised here should be addressed in an appeal from an order applying the Energy Freedom Act. For the same reason, this appeal does not present "questions of imperative and manifest urgency to establish a rule for future conduct in matters of important public interest." *See Wachesaw Plantation E. Cmty. Servs. Ass'n, Inc. v. Alexander*, 414 S.C. 355, 359, 778 S.E.2d 898, 900 (2015) (citation omitted).

## V. Conclusion

We find Coastal Conservation League and Southern Alliance for Clean Energy lack standing to appeal to this Court. As to Solar Business Alliance, we find the appeal is moot.

**DISMISSED.**

**BEATTY, C.J., KITTREDGE, HEARN and JAMES, JJ., concur.**